**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| CANAL INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV NO.: 1:07-cv-410-MHT |
| ) | |
| FRANK LADON COOK; et al., ) | ORAL ARGUMENT REQUESTED |
| ) | |
| Defendants. ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** the Defendant, by and through his undersigned counsel, and files this Opposition to Plaintiff's Motion for Summary Judgment and simultaneously submits Defendant's Motion for Summary Judgment and supporting evidentiary submissions. Defendant respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment, and grant Defendant's Motion for Summary Judgment. As evidence for the aforesaid request, Defendant shows unto the Court as follows:

**NARRATIVE STATEMENT OF DISPUTED AND UNDISPUTED FACTS**

The Declaratory Judgment action before the Court centers on an incident that occurred on or about March 30, 2006 when Frank Cook was seriously injured when a mobile home fell on him during the unloading process. See (Randy Lee Cook Jr. Dep. of November 8, 2006, p. 17, lines 15-22); (Colbert Bryan McGriff Dep. of September 14, 2007, p. 21, lines 17-23, p. 22, lines 1-23, p. 23, lines 1-

18); (Brasher Dep. of December 15, 2006, p. 46, lines 1-23, p. 47, lines 1-23.) Frank Cook was an independent contractor for Bear Creek Movers. (Colbert Bryan McGriff Dep. of November 8, 2006, p. 32, lines 1-3; Exhibit "G"). The owners of Bear Creek are Robin and Bryan McGriff. "Colbert Bryan McGriff DBA Bear Creek Movers" is the named insured on the Canal policy that was in effect on the date of the accident. See Exhibit "A," (Decl. page, Canal Insurance Policy.)

On February 21, 2006, Bear Creek sold a 2000 Redman Mobile Home to Lucy Van Palmore (hereinafter "Palmore"). See Exhibit "B," (Bill of Sale of February 21, 2006.) On the Bill of Sale, one line item included a charge of $1,200 for moving the mobile home to Palmore's property, which included the unloading work done by Frank Cook at the time the mobile home collapsed on him. See Id.; (Colbert Bryan McGriff Dep. of September 14, 2007, p. 21, lines 17-23, p. 22, lines 1-23, p. 23, lines 1-18; Exhibit "C"). Bryan McGriff described the moving process:

> Q: [W]hen you're transporting a mobile home, you've got to hook it up to what you call your toter truck?
> A: Yes, sir.
> Q: And that's the IH, the one that's described in the policy?
> A: A truck specifically designed to haul mobile homes.
> Q: Right. And when you're taking the mobile home out, you hook the toter truck up to the mobile home, that's one of the things you do; is that right?
> A: Yes.
> Q: And you drive it to wherever it's going to be delivered?
> A: Yes, sir.
> Q: In other words, you've got to stop, get out, inspect the site [when you get to the delivery location]?

> A: Yes, sir.
> Q: Now, when you stop your truck…and you get out, you inspect the site for what, stability?
> A: Just inspect the site to make sure that water is not going to run under the mobile home or stay under the house, you know, any time and make sure that it's, you know, hard enough there to back up on.
> Q: Right. In other words, stability?
> A: Yeah, stability.
> Q: Okay. And then if, I guess, in your experience you deem it safe for the mobile home to sit on that site, you then back the truck up onto the site?
> A: Yes, sir.

(Colbert Bryan McGriff Dep. of September 14, 2007 at p. 20, lines 19-23, p. 21, lines 1-23, p. 22, lines 1-23, p. 23, lines 1-18) (emphasis added).

Bryan McGriff placed the delivery and unloading of the mobile home into the hands of his delivery and unloading team that included Frank Cook, Sedro, Randy Lee Cook and David Brasher. (Randy Lee Cook Dep. of November 8, 2006, p. 24, line 3.) When Randy Lee Cook, the driver of the tractor-toter, got to the site he saw the following:

> Q: [C]an you describe what the land looked like where you were going to site the [mobile home]?
> A: They had a pad built up for it, and it was a little soft, the **pad was a little soft when I backed it in there. But it was – it was pretty close to level, it wasn't real bad off.** It might have been a little bit off on the woods side, but not bad, bad.
> Q: Did it appear to you that a lot of trees and debris had been moved?
> A: Yes, sir. Yes, sir, there had been some trees and stuff removed from the area.
> Q: Did you see any large stumps?
> A: I didn't see none.
> Q: And you said a pad built up, what do you mean by a "pad."?
> A: They brought dirt in –
> Q: Just brought dirt in?
> A: -- and built it up. Yes, sir. They brought dirt in and built it up on top of the grass and everything that was there, or tree stumps, or

3

>whatever they took out.  There were some trees and small brush and stuff down there that they had cleared off.  And then, they had put them pad – put the pad down.  The dirt, they had brought it in, and then they leveled it out and kind of crowned it off just a little bit, so water couldn't get up under the house.
>Q:  Okay.  **Could you tell if it had been compacted?**
>A:  **No, sir, I couldn't really tell.  It wasn't – it wasn't compacted good if it was.**
>Q:  And you say that because you were having trouble backing it in?
>A:  **When I backed it in, it was kind of soft because it made a little bit of ruts in it.  When it goes in there, it was soft feeling** whenever I was out there looking at the location.

(Randy Lee Cook Dep. of November 8, 2006, p. 143, lines 7-23, p. 144, lines 1-23, p. 145, lines 1-3) (emphasis added).

Even after Randy Lee Cook noticed that the ground was soft he, however, did not leave the tractor-toter on-site to assist in the unloading process.  According the Ray Helmer, this and other failures and inactions resulted in the collapse of the mobile home onto Frank Cook.  <u>See</u> Exhibit "D," (Ray Helmer Aff. of June 8, 2007, ¶ 4.)  Furthermore, David Brasher, who was at the site the day the mobile home fell on Frank Cook said during unloading:

>A:  The [mobile home] *is usually hooked to the toter*, which is what you pull the trailer with.  The tongue of the trailer is on the toter, and if you want to come up to the front of the trailer, you go hit the button and the winch picks that trailer up and then holds it there while you're working on the back.

(Brasher Dep. of December 15, 2006, p. 21, lines 21-23, p. 22, lines 1-4) (emphasis added.)

David Brasher, also, confirmed Randy Lee Cook's assessment that the pad was not compacted:

4

> Q: We've heard some testimony that when the truck was coming in, it was kind of soft or something, Did you notice any of that with the dirt?
> A: The pad we had the trailer on?
> Q: Yeah.
> A: It might have been graded off, but it wasn't packed, no, sir.
> Q: **It wasn't compacted?**
> A: **No, sir.**
> Q: It was –
> A: I guess what I'm saying – My way of explaining it is bring a dump truck of dirt in there, dump it, and take like a bucket off a backhoe, tilt it up, set it down and drag across it to kind of level it off. But as far as – I mean, you could have seen where it scraped the top, but as far as being a packer or anything like that on it, no, sir.
> Q: Okay. **Did it kind of give when you were walking on it?**
> A: **Yes, sir. You could leave a quarter-inch footprint in it**…

(Brasher Dep. of December 15, 2006, p. 34, lines 12-23) (emphasis added).

Furthermore, David Brasher said the mobile home was "sitting on a little slope" when he arrived to complete the unloading process. Id. at 33, line 2. Site evaluation, however, is only one part of the unloading process. According to Bryan McGriff, unloading includes:

> Q: [After the site has been checked and the truck and trailer have backed onto the site] And then you will stop your vehicle. And as I understand it, there's some piers that go up, tie downs that go down; is that right?
> A: Yes, sir.
> Q: **And everything I've just described from stopping at the site, inspecting the site for stability, to backing the truck and tractor over onto the site, setting up the piers, tying it down, that's all part of the unloading process; is that right?**
> …
> A: **Yes, sir**.
> Q: And as I understand the unloading process, the unloading work, the work that we've been talking about as unloading, that is not finished, is it not, until that mobile home has the piers set up and the tie downs set up, hold the mobile home stable, and then the truck is disconnected; is that right?
> A: That's right.

5

>   Q: That is when the unloading process is complete?
>   A: **That's when it is completed.**

(Colbert B. McGriff Dep. of September 14, 2007 at p. 22, lines 16-23, p. 23, lines 1-18) (emphasis added).

In the face of all these facts, which suggest coverage, Canal does not refute any of them. Instead, Canal's only specifically stated objection to coverage is that the mobile home was not "attached" to the tractor-toter at the time Frank Cook was seriously injured. See (Pl.'s Mot. for Summ. J., pp. 6, 8.) Under Canal's policy, however, several facts point toward coverage:

1. The incident occurred on or about March 30, 2006 and the policy was in effect during this time. See Exhibit "A," (Decl. page, Canal Insurance Policy); (Randy Lee Cook Jr. Dep. of November 8, 2006, p. 17, lines 15-22; Exhibit "E").

2. The Canal policy in Section A, Part I, covers "bodily injury…caused by an occurrence and ***arising out of*** the ownership, maintenance or ***use***, including loading and ***unloading***." See Exhibit "A," (Canal Insurance Policy, p. 1) (emphasis added).

3. In the Declarations section, "use" is listed as use for commercial purposes. See Exhibit "A," (Decl. page, Canal Insurance Policy.)

4. Also, in the Declarations section, Bear Creek movers had two owned automobiles insured. See Exhibit "A," (Decl. page, Canal Insurance Policy.)    Both the tractor-toter and the mobile home were "owned

6

automobiles" each with their own separate line item and numerical designation on the Declaration page of the policy. See Id. In the actual policy, "owned automobile" is defined as "an automobile which is owned by the named insured and described in the declarations." See Exhibit "A," (Canal Insurance Policy, p. 3). "Automobile" is defined as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads." Id. at 2. "Trailer" is defined as including "semi-trailer but does not include mobile equipment." Id. at 3. The policy places no limitation restricting a mobile homes transported by a tractor toter from being an "automobile" under the policy. In fact, the Declaration page lists a mobile home with contact with the tractor-toter as an owned automobile on line item "Auto No. 2." See Exhibit "A," (Decl. page, Canal Insurance Policy.)

5. Furthermore, the two owned automobiles were listed in a box titled "Description." The subtitles to this section include the words: "Year of Model"; "Trade Name"; "Body Type and Model; Truck Size; Truck Load; Tank Gallonage Capacity; or Bus Seating Capacity." See Exhibit "A," (Decl. page, Canal Insurance Policy.) In that box, Canal placed "Auto No. 1" as a "1988 IH TRACTOR" and "Auto No. 2" as "***ANY MOBILE HOME* WHILE SINGULARLY ATTACHED TO A SCHEDULED TRACTOR.**"[1] Id. (emphasis added).

---

[1] Apparently, the description was an attempt to limit coverage to only one mobile home under "Auto No. 2," since the mobile home could not be described by the listed terms of the Declaration pre-printed form.

7

6. In Section A, Part I, letter (i), bodily injury is excluded from coverage when that injury arises "out of the name insured's work after that work has been completed or abandoned." See Exhibit "A," (Canal Insurance Policy, Form E-125.)

Despite the facts and policy language that suggest coverage in this case, Canal Insurance Company denied coverage due to their broad interpretation of the descriptive language describing which mobile home is to be covered under the policy. See Exhibit "A," (Decl. page, Canal Insurance Policy.) Canal is now using this descriptive language to widen the limitation and exclusions of the policy without actually pointing to an exclusion or limitation in the body of policy.[2]

## STANDARD OF REVIEW

In a recent Middle District of Alabama case, Strickland v. Champion Enterprises, Inc., the standard of review for summary judgment included the following:

> Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-324 (U.S. 1986); Gonzalez v. Lee County Housing Authority, 161 F.3d 1290, 1294 (11th Cir. 1998). '[T]he substantive law will identify which facts are material.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (U.S. 1986). Only disputes about those facts will precluded the granting of summary judgment. Id.

---

Clearly, Canal wished to limit the mobile home covered under the policy to the one with the greatest connection to the tractor-toter. They did not wish to cover any mobile home in Bear Creek's inventory.
[2] Although the make general reference to the fact that the policy governs, Canal only specifically points to a description on the Declaration page as a way to deny coverage.

8

> A material fact is one 'that might affect the outcome of the suit under governing law," and a disputed about a material fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' Id; see also Slomcenski v. Citibank, N.A., 432 F.3d 1271, 1277 (11th Cir. 2005) (citations omitted). Thus, the initial burden of proof rests on the movant. Celotex, 477 U.S. at 325 (citation omitted). This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. Celotex, 477 U.S. at 322-23. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment *must* be granted. Celotex, 477 U.S. at 322-23. In other words, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. Id. at 322.

Strickland v. Champion Enterprises, Inc., Slip Copy, 2007 WL 1837136, *3 (M.D. Ala. June 26, 2007).

Also, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" demonstrate that there is no genuine issue of material fact. See Fed.R.Civ.P. 56(c).

## ARGUMENT

Plaintiff's argument that this Court should deny coverage for the injuries and damages sustained by Frank Ladon Cook can be boiled down to one sentence: Canal has the right to deny coverage because, at the time of the accident made the basis of the underlying lawsuit, the Redman mobile home which fell on Cook was not attached to the 1988 IH Tractor described in the declarations page of the

9

Policy. *See* (Canal's Mot. for Summ. Judg., p. 8). However, Canal fails to make a critical distinction which is outlined in Cook's Answer filed in this case: the Policy at issue provides coverage for "bodily injury or property damage" which is "caused by an occurrence…arising out of the ownership, maintenance or **use, including loading and unloading,** for the purposes stated as applicable thereto in the declarations, of an owned automobile." (Basic Automobile Liability Policy No. 470433; Exhibit "A"). The specific policy provision at issue in this case, Section A(I) states as follows:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of
>
> **bodily injury or property damage**
>
> to which this insurance applies, caused by an **occurrence** and *arising out of the ownership, maintenance or use, including loading and unloading*, for the purposes stated as applicable thereto in the declarations, *of an **owned automobile*** or of a **temporary substitute automobile**, and *the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage***, even if any of the allegations of the suite are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Basic Automobile Liability Policy No. 470433; Exhibit "A") (bold emphasis in original, italicized and underlined emphasis added). The Policy then goes on to provide definitions for some of the bolded terms *supra.*, including "owned automobile" as follows:

10

>**"owned automobile"** means either
>
>>(a)    An **automobile** which is owned by the **named insured** *and described in the declarations*; or…
>
>**"owned automobile"** includes a **trailer** not described in this policy, if designed for use with a four wheel **private passenger automobile** and if not being used for business purposes with another type **automobile**.

<u>Id.</u> (bold emphasis in original, italicized and underlined emphasis added).   As Canal correctly states in its motion that the declarations page of the Policy describes "owned automobiles" as "Auto No. 1," a "1988 IH TRACTOR" and "Auto No. 2," "ANY MOBILE HOME WHILE SINGULARLY ATTACHED TO A SCHEDULED TRACTOR."  (Basic Automobile Liability Policy No. 470433, Declarations page; Exhibit "A").

All parties in this action agree that the tractor, used to haul, deliver, and was used during the unloading of the mobile home which caused Cook's injuries, is the tractor described in the declarations page of the Policy and is an "owned automobile" within the meaning of the Policy.  The point of disagreement is found in whether or not the mobile home itself qualifies as an "owned automobile" within the meaning of the policy such that Canal has a duty to defend and indemnify McGriff and Bear Creek Movers for the injuries and damages Cook sustained.

As the only legal basis for their argument, Canal relies upon the case of *Canal Ins. Co. v. Old Republic Ins. Co.*, 718 So. 2d 8 (Ala. 1998)[3], wherein the Alabama Supreme Court held that there was no coverage, and therefore, no duty to defend or indemnify, on the part of Canal, where the trailer at issue in that case was not "attached" to the scheduled tractor at the time of the loss. *Canal Ins. Co. v. Old Republic Ins. Co.*, 718 So. 2d 8 (Ala. 1998). In the instant case, Canal argues that the policy language which governed the *Old Republic* case is identical to the policy language at issue in this case, and therefore, the identical analysis utilized by the Alabama Supreme Court dictates that Canal has no duty to defend or indemnify here. What Plaintiff fails to alert this Court to is a critical distinction between the two cases: in *Old Republic*, the tractor being used to tow the mobile home which caused the loss was not the tractor described in the declarations page of the insurance policy as an "owned automobile." *Id*. at 9. It was on this basis alone that the Alabama Supreme Court denied coverage and held that Canal had no duty to defend. *See Canal Ins. Co. v. Old Republic Ins. Co.*, 718 So. 2d 8, 9 (Ala. 1998). The language regarding whether or not the mobile home was "attached" to the tractor at the time of the accident was not a true basis for the opinion. Indeed, in its opinion, the Alabama Supreme Court held that the mobile home could never qualify as an "owned automobile" because its classification as such was dependent on its being attached to the tractor described in the policy. As

---

[3] Attached to Defendant's Evidentiary Submission in Support of Opposition to Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment.

the tractor being used was not even the tractor described as an "owned automobile," the mobile home could never qualify as an "owned automobile" because its coverage was dependent on coverage for the tractor. Id.

If one follows the logic of the Plaintiff's argument to its end, this is the final result: based on Canal's argument, if McGriff were driving the insured tractor-toter down Interstate 65 with a mobile home attached to it, jackknifed, and the mobile home came unattached from the tractor, struck another vehicle, and killed the family in that vehicle, Canal would be able to deny coverage because at the time the injury occurred, the mobile home was not "attached" to the tractor. Not only is this reasoning preposterous and ill founded, it is certainly against public policy as it would allow any insurance company which underwrites automobile liability policies covering a towed vehicle to deny coverage the moment that towed vehicle comes unattached in the course of an accident. The Alabama Supreme Court "has consistently held that 'exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured.'" Id. (citing Employers Ins. Co. of Alabama, Inc. v. Jeff Gin Co., 378 So.2d 693 (Ala. 1979).

In direct contrast to the argument presented by the Plaintiff, the Alabama Supreme Court has held that a trailer is still covered even after becoming detached from an insured automobile. *See Amerisure Ins. Co. v. Allstate Ins. Co.*, 582 So.2d 1100 (Ala. 1991). In *Amerisure*, the policy described coverage as extending to a "trailer, *while attached* to an insured auto." *Id*. (emphasis added). The Court

found there was coverage even though the trailer became disconnected from the automobile before the trailer struck another vehicle. *Id.* This reasoning used by the Alabama Supreme Court in *Amerisure* is the exact reasoning this Court should use in making its determination as to coverage. In the instant case, the negligent "occurrence…arising out of the...use, including loading and unloading" of the mobile home began long before the mobile home was disconnected from the covered tractor.[4]

Randy Lee Cook, the driver of the tractor-toter testified that when he arrived to the delivery location the ground was "soft" and the mobile home wheels "made a little bit of ruts" in the pad. *See* (Randy Lee Cook Dep. of November 8, 2006, p. 143, lines 7-23, p. 144, lines 1-23, p. 145, lines 1-3). Instead of remaining at the delivery site so that the tractor could assist in the unloading process, especially on a soft pad, Randy Lee Cook took the tractor with him and left the remaining unloading crew to work without the support of the tractor. In his affidavit, Defendant's expert, Ray Helmer, has stated that these failures and inactions by Randy Lee Cook constituted the beginning of the negligent acts, failures and omissions that led to the collapse of the mobile home onto Cook. *See* (Ray Helmer Aff. of June 8, 2007, ¶ 4(a), (b), (c), (d), (e), and (f)). In fact, the actions and failures listed by Helmer in his affidavit were all actions and failures

---

[4] Defendant would also point out that Canal is attempting to have this Court make a determination regarding coverage based on one, isolated phrase in the policy, rather than based upon the policy as a whole. Alabama case law is well settled on this point: "[A] court cannot consider the language in the policy in isolation, but must consider the policy as a whole." *Am. Resources Ins. Co. v. H & H Stephens Const. Co., Inc.*, 939 So. 2d 868, 873 (Ala. 2006) (citing *Turner v. United States Fidelity & Guar. Co.*, 440 So. 2d 1026 (Ala. 1983)).

that should have been performed before Randy Lee Cook unhooked the tractor from the mobile home and left the unloading location. *Id.*

Moreover, Bryan McGriff has given uncontroverted deposition testimony clearly showing that the proper unloading process was not followed in this case, which ultimately caused Cook's injuries. Indeed, the following exchange took place during McGriff's September 14, 2007 deposition:

> Q: [After the site has been checked and the truck and trailer have backed onto the site] And then you will stop your vehicle. And as I understand it, there's some piers that go up, tie downs that go down; is that right?
> A: Yes, sir.
> Q: **And everything I've just described from stopping at the site, inspecting the site for stability, to backing the truck and tractor over onto the site, setting up the piers, tying it down, that's all part of the unloading process; is that right?**
> …
> A: **Yes, sir**.
> Q: And as I understand the unloading process, the unloading work, the work that we've been talking about as unloading, that is not finished, is it not, until that mobile home has the piers set up and the tie downs set up, hold the mobile home stable, and then the truck is disconnected; is that right?
> A: That's right.
> Q: That is when the unloading process is complete?
> A: **That's when it is completed.**

(Colbert B. McGriff Dep. of September 14, 2007 at p. 22, lines 16-23, p. 23, lines 1-18) (emphasis added).

Additionally, David Brasher testified that the mobile home was "usually hooked to the toter" during the unloading process. *See* (Brasher Dep. of December 15, 2006, p. 21, lines 21-22; Exhibit "F"). Plaintiff will most likely dispute that the negligent actions and failures by the independent contractors of

15

Bear Creek Movers constitute "unloading" within the meaning of the policy; however, the Alabama Supreme Court has long held that the "[t]he placing of [a] package [is] part of the unloading" for which coverage under an insurance policy exists. *See Pacific Indemnity Co. v. Run-A-Ford Co.*, 161 So. 2d 789, 792 (Ala. 1964). In *Pacific Indemnity*, an insured sued for declaratory judgment based upon allegations of negligence in the delivery of a package in an underlying lawsuit. *Id.* In considering the insurers denial of coverage, the Court stated as follows:

> Plaintiff's injury here allegedly resulted from negligent placing of the package. The placing of the package was part of the unloading. We are of the opinion that the injury thus allegedly **arose out of the unloading**, and that, **because the policy covered injuries arising out of the unloading**, the policy covered insured's liability to pay for the injury here.

*Pacific Indemnity Co. v. Run-A-Ford*, 161 So. 2d 789, 792 (Ala. 1964) (emphasis added).

Based upon the foregoing analysis of the Alabama Supreme Court and the arguments of Canal which clearly fly in the face of sound public policy, Plaintiff's Motion for Summary Judgment is due to be denied. Further, Defendant requests this Court grant Summary Judgment and Order that Canal has a duty to defend and indemnify McGriff and Bear Creek Movers in the underlying lawsuit.

**II.     Any confusion created by language used by the drafter of the policy, Canal, should be resolved in favor of the insured, Bear Creek Movers.**

"When doubt exists whether coverage is provided, the language used by the insurer must be construed for the benefit of the insured." Guaranty Nat. Ins. Co. v.

16

Marshall County Bd. of Educ., 540 So.2d 745, 748 (citing Aetna Cas. & Sur. Co. v. Chapman, 240 Ala. 599 (Ala. 1941)). "If the language of an automobile policy is reasonably susceptible of different interpretations, the general principle applies that such language will be given the construction most favorable to the insured." Alabama Farm Bur. Mut. Cas. Ins. Co. v. Tubbs, 304 So.2d 589, 590 (Ala. 1974). "Policies of insurance being carefully prepared by the insurer, when containing provisions reasonably subject to different constructions, one favorable to the insurer and one favorable to the insured, the construction favorable to the insured shall prevail. As sometimes stated, the insured is entitled to the protection which he may reasonably expect from the terms of the policy he purchases." Id. (quoting Aetna Cas. & Sur. Co. v. Chapman, 240 Ala. 599, 602 (Ala. 1941). The Alabama Supreme Court "has consistently held that 'exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured.'" Id. (citing Employers Ins. Co. of Alabama, Inc. v. Jeff Gin Co., 378 So.2d 693 (Ala. 1979).

Alabama case law sides with the insured in battles over policy language. The reason is clear. The insurer as the drafter had a clear opportunity at the beginning to put in the language they wished the policy to contain to define the relationship. Therefore, any confusion created by the language used by Canal should be resolved in favor of the insured, Bear Creek. Defendants contend that there is no ambiguity; that the policy clearly covers the insured and the incident in the underlying action. The language "WHILE SINGUARLY ATTACHED TO A

17

SCHEDULED TRACTOR" is merely descriptive language limiting "ANY MOBILE HOME" under "Auto No. 2" to the mobile home with the greatest connection to the tractor-toter. If, however, the Court has the view that there is any confusion regarding the policy language, that confusion, under Alabama law, should be resolved in favor of the insured, Bear Creek Movers and McGriff.

**WHEREFORE, PREMISES CONSIDERED**, Defendant respectfully requests this Court deny Plaintiff's Motion for Summary Judgment, and grant Defendant's Motion for Summary Judgment. Plaintiff has failed to meet the standard of Rule 56(c) and the standard of review in Federal Court by failing to demonstrate sufficiently that coverage does not exist, and that they will be able to meet their burden at trial. Plaintiff will bear the burden at trial, but it is the Defendant, not the Plaintiff, who have produced uncontroverted evidence of the definition of the term unloading and the fact that the tractor and mobile home were being used for commercial purposes at the time of the accident, which demonstrate that coverage exists in this case. Plaintiff has failed to show how they will meet their burden at trial of demonstrating that coverage does not exist other than their discussion of <u>Canal Ins. Co. v. Old Republic Ins. Co.</u>, whose facts are easily distinguishable from the facts of the underlying action. This is an insufficient showing by Plaintiff on how it will meet its burden, and therefore, summary judgment in favor of the Defendant is due to be granted.

**ORAL ARGUMENT REQUESTED**

        Respectfully submitted,

        /s/ L. Andrew Hollis, Jr._____
        L. ANDREW HOLLIS, JR. (HOL-043)

**OF COUNSEL:**
**HOLLIS & WRIGHT, P.C.**
1500 Financial Center
505 North 20th Street
Birmingham, Alabama 35203
(205) 324-3600
(205) 324-3636 Facsimile

**CERTIFICATE OF SERVICE**

      I hereby certify that I have served a true and correct copy of the above and foregoing via the CM/ECF system, this the 23rd day of October, 2007, which will provide notice to the following:

K. Donald Simms
David R. Wells
Miller, Hamilton, Snider & Odom, L.L.C.
500 Financial Center
505 20th Street North
Birmingham, Alabama 35203

Samuel L. Adams, Esq.
Merrill, Harrison & Adams, LLC
Post Office Box 1690
Dothan, Alabama 36302

Rufus R. Smith, Esq.
Post Office Drawer 6629
Dothan, Alabama 36302-0000

        /s/ L. Andrew Hollis, Jr._____
        OF COUNSEL