IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
CANAL INSURANCE COMPANY,      )
                              )
     Plaintiff,               )
                              )
v.                            )  CASE NO.  1:07cv410-MHT
                              )          (WO)
FRANK LADON COOK,             )
COLBERT BRIAN MCGRIFF, and    )
BEAR CREEK SALES, L.L.C.,     )
                              )
     Defendants.              )
```

## BRIEF OF DEFENDANTS MCGRIFF AND BEAR CREEK IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Colbert Brian McGriff ("McGriff") and Bear Creek Sales, L.L.C. ("Bear Creek") and file this Brief in Support of their Motion for Summary Judgment in the above-referenced case. McGriff and Bear Creek incorporate herein by reference thereunto their previously filed Response to Motion for Summary Judgment, and the Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Defendant's Brief in Support of Motion for Summary Judgment filed by Defendant Frank Ladon Cook.

## FACTS

The essential facts in this case are undisputed. McGriff and Bear Creek have previously adopted by reference the statement of facts offered by the Plaintiff. (See

McGriff and Bear Creek's Response to Motion for Summary Judgment.) Defendant Frank Ladon Cook ("Cook") has filed a lawsuit in the Circuit Court of Henry County, Alabama. In the Second Amendment to that lawsuit, Cook claims, in pertinent part, that on March 30, 2006, while he was working as an independent contractor for Defendants Bear Creek[1] and McGriff, he was trying to set up a mobile home when it suddenly shifted and collapsed on him, injuring him severely. (Second Amendment to State Court Complaint, Exhibit 1, Count LX, ¶¶ 47–51.) Cook alleges that Randy Lee Cook ("R. Cook"), an agent of Bear Creek and McGriff, delivered the mobile home using a vehicle owned by Bear Creek and McGriff, and that R. Cook improperly unloaded the mobile home. (Id.) Cook's lawsuit also charges Bear Creek and McGriff with "failing to ensure that the subject trailer was unloaded in a location that was reasonably safe for persons" and "failing to supervise ... agents, employees, servants and/or persons who used or borrowed vehicle owned by Defendants that were used to load, transport and unload the subject trailer.") (Id. at ¶ 49.)

---

[1] Bear Creek is a company which sells, moves and sets up mobile homes. (McGriff Depo., p. 9, line 13 through p. 12, line 21.)

R. Cook transported the mobile home to the set-up site using a 1988[2] IH Tractor ("the tractor") owned by McGriff, who is also the owner of Bear Creek. (Deposition of Colbert B. McGriff, "McGriff Depo.," relevant portions of which are attached hereto as Exhibit 2, at p. 13, line 6 through p. 15, line 13 and p. 24, lines 3 through 8.) The mobile home was not attached to the tractor at the time of the accident. It had been detached and the tractor was driven away from the site a day or more earlier. (McGriff Depo. at p. 14, line 22-p. 15, line 9.)

At the time of the accident which is made the basis of the state court lawsuit, McGriff had in force a Basic Automobile Liability policy issued by the Plaintiff, Canal Insurance Company ("Canal"). A true and correct copy of the declarations page and relevant portions of the policy (collectively, "the Canal Insurance Policy") is attached hereto as Exhibit 3; a copy of the same was attached to McGriff's Depo. as Exhibit 1. The declarations page lists the following scheduled Owned Automobiles:

1. 1988 IH TRACTOR, Serial No. 1HSZDGEN7JH571292;

---

[2]    On various occasions during McGriff's deposition the tractor was mistakenly referred to as a 1998 model.

2. ANY MOBILE HOME WHILE SINGULARLY ATTACHED TO A SCHEDULED TRACTOR.

(Canal Insurance Policy, p. 1.) The Canal Insurance Policy states in pertinent part as follows:

**I. COVERAGE A — BODILY INJURY LIABILITY ——**

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

**bodily injury ...**

to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, <u>including loading and unloading</u> for the purposes stated as applicable thereto in the declarations, of an **owned** automobile or of a **temporary substitute** automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such **bodily** injury ...

    ...

**III. PERSONS INSURED: Each of the following is an** insured under this insurance to the extent set forth below:

(a) the **named insured;**

    ...

(c) any other person while using an **owned automobile** or a **temporary substitute automobile** with the permission of the **named insured,** provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to **bodily injury ...** arising out of the loading or unloading

4

thereof, such other person shall be an **insured** only if he is:

    (1) a lessee or borrower of the **automobile,** or
    (2) an employee of the **named insured** or of such lessee or borrower;

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an **insured** under (a), (b) or (c) above.

    ...

**VI. DEFINITIONS:** When used in this policy (including endorsements forming a part hereof):

**"automobile"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include **mobile equipment;**

    ...

**"bodily injury"** means bodily injury ... sustained by any person which occurs during the policy period ...

    ...

**"insured"** means any person ... qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage...

**"named insured"** means the person ... named in Item 1 of the declarations of this policy;

**"occurrence"** means an accident ... which results in bodily injury ... neither expected nor intended from the standpoint of the insured;

**VII. Additional Definitions (Automobile Liability Insurance):** When used in reference to this insurance (including endorsements forming a part of the policy):

"**owned automobile**" means ...

(a) an **automobile** which is owned by the **named insured** and described in the declarations[.]

(Canal Insurance Policy pp. 3-5)(underlining added; bold in original). Everette Lee Herndon, Jr., a claim adjuster and claim supervisor, testified by affidavit that, within the meaning of the insurance policy, Cook was unloading the mobile home at the time of the accident. (Affidavit of Everette Lee Herndon, Exhibit 4, at p. 2, ¶ 6.)

R. Cook testified in his deposition that, when he delivered the home, he noted that the site where he placed the mobile was not "compacted" well. (Deposition of Randy Lee Cook, hereinafter "R. Cook Depo.," relevant portions of which are attached hereto as Exhibit 5, at p. 143-44, lines 15-19.) Ray G. Helmer, a Licensed Professional Engineer, has opined that Cook was injured because Bear Creek improperly failed to inspect the mobile home site to insure that the area was "compacted" and stable; and failed to ensure that a person certified in "mobile home set-up" was present during the delivery and unloading process. (Affidavit of Ray G. Helmer, Exhibit 6, at pp. 1-2.)

Canal has asked the Court to determine whether it has a duty to defend Bear Creek and McGriff in the underlying state-court lawsuit, arguing that there is no coverage because the mobile home was not attached to the tractor at the time of the accident.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17, (11th Cir. 1993) (discussing burden-shifting under Rule 56). The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Midlothian Laboratories, L.L.C. v. Pamlab, L.L.C. 509 F.Supp. 2d 1065, 1072 (M.D. Ala. 2007) (Thompson, J.)

The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. See, e.g., <u>Gerling Global Reins. Corp. of Am. v. Gallagher</u>, 267 F.3d 1228, 1233 (11th Cir.2001). The Eleventh Circuit has held that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled' to judgment as a matter of law on facts that are not genuinely disputed." <u>United States v. Oakley</u>, 744 F.2d 1553, 1555 (11th Cir.1984) (citation omitted). However, it is also true that cross-motions may indicate the absence of a factual dispute where they reflect general agreement by the parties as to the dispositive legal theories and material facts. <u>Id.</u> at 1555–56.

<u>Conference America, Inc. v. Conextant Systems, Inc.</u> 508 F. Supp. 2d 1005, 1010 (M.D. Ala. 2007).

## ARGUMENT

McGriff and Bear Creek are entitled to a judgment as a matter of law that the Canal Insurance Policy obligates the Plaintiff to provide them with a defense for two reasons: First, the IH Tractor and the mobile home, while attached thereto, are clearly owned automobiles as defined by the Canal Insurance Policy. (defining "owned automobile" as "1988 IH TRACTOR and ANY MOBILE HOME WHILE SINGULARLY ATTACHED TO A SCHEDULED TRACTOR.") Second, the incident of which Cook complains in his state-court lawsuit occurred while R. Cook was unloading an "owned automobile," the

mobile home, but while it was still attached to the IH Tractor during the delivery and unloading process. (Second Amendment to State Court Complaint, Doc. No. 1-4, at 3)("The subject mobile home trailer was improperly unloaded by Randy Lee Cook while and during his permissive use and/or operation of a delivery vehicle that was owned by Defendants Bear Creek, LLC and Colbert Bryan McGriff.") In other words, R. Cook, while the mobile home was still connected to the tractor, set the mobile home down and unloaded it on an unsafe site. The policy plainly covers "loading and unloading ... an owned automobile." (Canal Insurance Policy . . .

This case is analogous to Pacific Indem. Co. v. Run-A-Ford Co., 276 Ala. 311, 314 (Ala. 1964). In Run-A-Ford, a company delivered a package to a customer's home, placed the package in front of the customer's doorway, and drove away. The customer later tripped over the package and was injured. 276 Ala. at 313. The vehicle used to transport the package for delivery was insured by a policy which provided coverage for injuries arising from the "'[u]se of the automobile for the purposes stated includes the loading and unloading thereof.'" Id. As in the present case, the

insurance company denied liability, claiming that the goods had already been delivered at the time that the injury occurred. On appeal, the Alabama Supreme Court held that although the injury occurred after this vehicle had left the site, the alleged negligence occurred while the insured vehicle was delivering the goods. The court found that the injury "arose out of ... unloading, and that, because the policy covered injuries arising out of the unloading, the policy covered insured's liability to pay for the injury here." 276 Ala. at 314. The court stated: "[T]he process of unloading includes at least the entire operation during which the article is lifted and removed from the vehicle up to the moment when the article has actually come to a place of rest outside the vehicle and the connection of the vehicle with the process of unloading has ceased." Id. In the same way, the alleged negligence in the present case occurred when Bear Creek agent placed the mobile home on an unsuitable site and then drove away.

WHEREFORE, Defendants McGriff and Bear Creek move the Court to enter summary judgment in their behalf and find that as a matter of law they are entitled to a defense pursuant to the Canal Insurance Policy.

HOGG, NORTH & BROOK, LLC


s/ David K. Hogg_____
David K. Hogg (HOG007)
Attorney for Defendants
Bear Creek and McGriff
408 South Foster Street
Dothan, Alabama 36301
Phone: (334) 699-4625
Fax:   (334) 699-3947
E-mail: hogglaw@graceba.net
Bar ID No: ASB-4589-055D

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Samuel L. Adams, Esq.
P.O. Box 1690
Dothan, Alabama 36302

Randy Smith, Esq.
P.O. Drawer 6629
Dothan, Alabama 36302

K. Donald Simms, Esq.
500 Financial Center
505 20th Street North
Birmingham, Alabama 35203

David Wells, Esq.
500 Financial Center
505 20th Street North
Birmingham, Alabama 35203

L. Andrew Hollis, Esq.
1500 Financial Center
505 20th Street North
Birmingham, Alabama 35203

s/ David K. Hogg
David K. Hogg

IN THE CIRCUIT COURT OF HENRY COUNTY, ALABAMA

FRANK LADON COOK, an individual;　　　)

　　　　　Plaintiff,　　　　　　　　　　)

vs.　　　　　　　　　　　　　　　　　　)　　　CV 06 42

BEAR CREEK SALES, L.L.C., a corporation;　)

　　　　　Defendants.　　　　　　　　　　)

## PLAINTIFF'S SECOND AMENDMENT TO COMPLAINT

COMES NOW the Plaintiff, and pursuant to Alabama Rules of Civil Procedure 9 and 15, hereby amends his original complaint and amendment thereto, by adding the following party Defendant and by adding and substituting the following claims as set out below:

43.　　Plaintiff substitutes Colbert Bryan McGriff as party defendant in this matter in lieu of and instead of fictitious party number 2 in the original complaint.

44.　　Defendant Colbert Bryan McGriff is over the age of nineteen years and is a resident citizen of Geneva County, Alabama.

## COUNT LX

45.　　Plaintiff reaffirms and realleges each and every allegation of the original complaint and any amendments thereto.

46.　　At all times relevant to this amended complaint,　Plaintiff Frank Ledone Cook, was and independent contracted oT Defendants Bear Creek Sales, L.L.C., and Colbert Bryan McGriff.



47.     On or about March 30, 2006, Plaintiff, Frank LaDon Cook, while performing his duties as an independent contractor during a mobile home trailer set up, was attempting to set a pier underneath said mobile home that had been improperly unloaded by Defendant Bear Creek Sales, LLC, and/or its agent, servant and/or employee Randy Lee Cook, and Defendant Colbert Bryan McGriff when the mobile home shifted, collapsed and landed on the plaintiff. The subject mobile home trailer was improperly unloaded by Randy Lee Cook while and during his permissive use and/or operation of a delivery vehicle that was owned by Defendants Bear Creek, LLC and Colbert Bryan McGriff.   All acts of negligence, willful and wanton conduct on the part of the Defendants in this count arise out of the permissive use and/or operation of the delivery vehicle that was and is owned by Defendants Bear Creek Sales, LLC and Colbert Bryan McGriff.

48.     On or about March 30, 2006, and at all times relevant to this action, Defendants Bear Creek Sales, LLC, Colbert Bryan McGriff and Randy Lee Cook, as the entities and/or persons who unloaded the subject trailer onto the subject trailer site, had a duty to unload the subject trailer in a reasonably safe manner such as to not allow the subject trailer to present a danger to others, such as the plaintiff.

49. Defendants   Colbert   Bryan   McGriff and   Bear   Creek   Sales, LLC,

individually and through its agents, servants and/or employee Randy Lee Cook, in a negligent, willful and/or wanton manner, breached their respective duties by (i.) failing to ensure that the subject trailer was properly unloaded; (ii.) failing to ensure that the subject trailer was unloaded in a location that was reasonably safe for persons, such as Plaintiff, to then perform his independent contractor responsibilities

in a reasonably safe manner; (iii.) failing to supervise and or train its agents, employees, servants and/or persons who used or borrowed vehicles owned by Defendants that were used to load, transport and unload the subject trailer; and (iv.) by affirmatively creating a dangerous hazard via unloading the subject trailer onto and upon a location that was not fit for the installation or support of the subject trailer.

50.    Defendants Bear Creek Sales,  LLC and Colbert Bryan McGriff, independently and/or through its agent, servant, and/or employee Randy Lee Cook knew or should have known that their respective negligent, willful and/or wanton conduct as described above would cause injury and damage to Plaintiff.

51.    As a proximate result of the Defendants' conduct, Plaintiff was caused to suffer substantial injury and damages as follows:

    (a)   Plaintiff sustained a crushing injury to his spine that has left him a paraplegic.

    (b)   Plaintiff was caused and will be caused in the future to suffer great physical pain, emotional distress and anguish.

    (c)   Plaintiff was caused and will be caused in the future to expend large sums of money in the nature of doctor, hospital, drug any other medical expenses in and about an effort to heal and cure his said injuries.

    (d)   Plaintiff was caused to be permanently unable to pursue many of this normal and usual activities.

WHEREFORE, plaintiff demands judgment against the defendants separately and severally, including fictitious party defendants, in a sum in excess of the jurisdictional limits of this Court, to be determined by a jury which will fairly and

adequately compensate the plaintiff for the above described damages, together with interest from the date of the incident and the cost of the proceeding.

## COUNTX

52.     Plaintiff reaffirms and realleges each and every allegation of the original complaint and any amendments thereto.

53.     At all times relevant to this amended complaint, Plaintiff Frank Ledon Cook was an independent contractor of Defendants Bear Creek Sales, L.L.C.., and Colbert Bryan McGriff.

54.     On or about March 30, 2006, Plaintiff, Frank LaDon Cook, while performing his duties as an independent contractor during a mobile home trailer set up, was attempting to set a pier underneath said mobile home that had been improperly unloaded by Defendant Bear Creek Sales, LLC, and/or its agent, servant and/or employee Randy Lee Cook, and Defendant Colbert Bryan McGriff, when the mobile home shifted, collapsed and landed on the plaintiff. The subject mobile home trailer was improperly unloaded by Randy Lee Cook while and during his permissive use and/or operation of a delivery vehicle that was owned by Defendants Bear Creek, LLC and Colbert Bryan McGriff.

55.     On or about March 30, 2006, and at all times relevant to this action, Defendants Bear Creek Sales, LLC, Colbert Bryan McGriff and Randy Lee Cook, as those entities and/or persons who unloaded the subject trailer onto the subject trailer site, had a duty to unload the subject trailer in a reasonably safe manner such as to not allow the subject trailer to present a danger to others, such as the plaintiff.

56. Defendants Colbert Bryan McGriff and Bear Creek Sales, LLC,

individually and through its agents, servants and/or employee Randy Lee Cook, in a negligent, willful and/or wanton manner, breached their respective duties by (i.) failing to warn Plaintiff that the subject trailer was not properly unloaded; (ii.) failing to warn Plaintiff that the subject trailer was unloaded in a location that was not reasonably safe for persons, such as Plaintiff, to then and thereafter perform his responsibilities as an independent contractor in a reasonably safe manner; (hi.) failing to warn Plaintiff that the Defendants had failed to supervise and or train its agents, employees, servants and/or persons who operated and/or borrowed vehicles owned by Defendants that were used to load, transport and unload the subject trailer; and (iv.) by failing to warn the Plaintiff that the Defendants had affirmatively created a dangerous hazard via unloading the subject trailer onto and upon a location that was not fit for the installation or support of the subject trailer.

57. Defendants Bear Creek Sales, LLC and Colbert Bryan McGriff,

independently and/or through its agent, servant, and/or employee Randy Lee Cook knew or should have known that their respective negligent, willful and/or wanton conduct as described above would cause injury and damage to Plaintiff.

58. As a proximate result of the Defendants' conduct, Plaintiff was caused to suffer substantial injury and damages as described above.

WHEREFORE, plaintiff demands judgment against the defendants separately and severally, including fictitious party defendants, in a sum in excess of the

jurisdictional limits of this Court, to be determined by a jury which will fairly and

adequately compensate the plaintiff for the above described damages, together with interest from the date of the incident and the cost of the proceeding.

## COUNT XI

59.    Plaintiff reaffirms and realleges each and every allegation of the original complaint and any amendments thereto.

60.    At all times relevant to this amended complaint,   Plaintiff Frank Ledone Cook, was and independent contractor of Defendants Bear Creek Sales, L.L.C., and Colbert Bryan McGriff.

61.    On or about March 30, 2006, Plaintiff, Frank LaDon Cook, while performing his duties as an independent contractor during a mobile home trailer set up, was attempting to set a pier underneath said mobile home that had been improperly unloaded by Defendant Bear Creek Sales, LLC, and/or its agent, servant and/or employee Randy Lee Cook, and Defendant Colbert Bryan McGriff when the mobile home shifted, collapsed and landed on the plaintiff. The subject mobile home trailer was improperly unloaded by Randy Lee Cook during his permissive use and/or operation of a delivery vehicle that was owned by Defendants Bear Creek, LLC and Colbert Bryan McGriff.

62.    At all times material to this amended complaint, Defendants Bear Creek Sales, LLC and Colbert Bryan McGriff were the supervisors, employers, masters, and/or persons and/or entities that held the duty to and did provide training, instruction, direction and/or supervision to Randy Lee Cook with regard to the unloading of mobile home trailers, including the subject mobile home trailer.

63.    On or about March 30, 2006 and at all times materials to this amended complaint, Defendants Bear Creek Sales, LLC and Colbert Bryan McGriff

negligently, willfully and/or wantonly failed to properly supervise their employee, servant, agent Randy Lee Cook.

64.    Defendants Bear Creek Sales, LLC and Colbert Bryan McGrifF, knew or should have known that their respective negligent, willful and/or wanton conduct as described above would cause injury and damage to Plaintiff.

65.    At no time did Plaintiff have knowledge or realize that Defendants Bear Creek Sales, LLC, and Colbert Bryan McGriff did breach their respective duties.

66.    As a proximate result of the Defendants' conduct, Plaintiff was caused to suffer substantial injury and damages as described above.

WHEREFORE, plaintiff demands judgment against the defendants separately and severally, including fictitious party defendants, in a sum in excess of the jurisdictional limits of this Court, to be determined by a jury which will fairly and adequately compensate the plaintiff for the above described damages, together with interest from the date of the incident and the cost of the proceeding.

### JURY DEMAND

Plaintiff hereby requests a trial by struck jury on all issues of this cause.

L. ANDREW HOLLIS, JR. (HOL-043)
Attorney for the Plaintiff

OF COUNSEL:
HOLLIS & WRIGHT, P.C.
1500 Financial Center 505
North 20th Street Birmingham,
Alabama 35203 (205) 324-3600
(205) 324-3636 Facsimile

### CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true and correct copy of the above and
foregoing by U.S. Mail, properly addressed and postage prepaid this the _2A_    day
of ,2007 to:

Samuel L. Adams, Esq. Merrill,
Harrison & Adams, LLC Post
Office Box 1690 Dothan, Alabama
36302

Charles A. Stewart, III, Esq.
Bradley, Arant, Rose & White, LLP
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104

William L. Lee, IV, Esq.
Lee & Mclnish, P.C. Post
Office Box 1665 Dothan,
Alabama 36302

Gregory S. Ritchey, Esq. Ritchey &
Ritchey, PA Post Office Drawer
590069 Birmingham, Alabama
35259-0069

Rufus R. Smith, Esq. Post
Office Drawer 6629 Dothan,
Alabama 36302-0000

OF COUNSEL

## PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL AT:

Colbert Bryan McGriff c/o Bear
Creek Sales, L.L.C. 771 east
Lawrence Harris Highway Slocomb,
Alabama 36375

# FREEDOM COURT REPORTING

Page 1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE MIDDLE DISTRICT OF ALABAMA

3    SOUTHERN DIVISION

4

5    CIVIL ACTION NUMBER  1:07CV410-MHT

6    CANAL INSURANCE COMPANY,

7

8        Plaintiff(s),

9    v.

10   FRANK LONDON COOK; COLBERT

11   BRIAN McGRIFF; LOWE'S HOME

12   CENTERS, INC.; L.G. SOURCING,

13   INC.; and BEAR CREEK MOVERS,

14   LLC.,

15       Defendant(s).

16

17       DEPOSITION TESTIMONY OF:

18         COLBERT B. MCGRIFF

19

20   Commissioner:

21   Renny D. McNaughton

22   September 14, 2007

23   Dothan, Alabama

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 9

1      Q     What do you do for the Board of

2  Education?

3      A     Transportation maintenance

4  supervisor.

5      Q     How long have you worked in that

6  position?

7      A     That position, about seven years.

8      Q     In addition to working for the

9  Houston County Board of Education, do you

10  have any businesses that you run or own?

11      A     Yes.

12      Q     How many?

13      A     Bear Creek Sales.  Bear Creek

14  Movers, or however it's listed here on this

15  policy here.  Do you want me to read it off

16  here so that we can be more specific.

17           (Whereupon, Defendant's

18           Exhibit Number 1 was marked and

19           attached to the deposition.)

20  BY MR. WELLS:

21      Q     I'm going to mark Defendant's

22  Exhibit 1.  And that's a copy of the policy

23  that was provided to me by Canal as the

## FREEDOM COURT REPORTING

Page 10

1  policy at issue here that was attached to

2  our declaratory judgment.

3          MR. ADAMS:  Off the record.

4          (Off the record.)

5  BY MR. WELLS:

6     Q    Mr. McGriff, you and your

7  attorney looked at what I marked as

8  Defendant's Exhibit 1, which I will

9  represent to you is a copy of the Canal

10  policy at issue in the declaratory judgment

11  action.  Have you seen that policy before?

12     A    Yes, sir.

13     Q    Okay.  And you were telling me

14  about the businesses that y'all own.  And

15  with respect to the Canal policy,

16  Defendant's Exhibit 1, the insured is

17  Colbert Brian McGriff, d/b/a, or doing

18  business as Bear Creek Movers?

19     A    Yes.

20     Q    And then you also mentioned you

21  own Bear Creek Sales?

22     A    That wouldn't be in conjunction

23  with this, would it?

## FREEDOM COURT REPORTING

Page 11

1      Q      I'm actually -- I'm just trying

2   to find out what other businesses you might

3   own besides working for the Houston County

4   Board of Education.

5          A      Okay.  Bear Creek Sales.

6          Q      What kind of business is Bear

7   Creek Sales?

8          A      Sells mobile home.

9          Q      And you own that along with your

10  wife?

11         A      I reckon you could say we do.

12  We're married, so yes.

13         Q      Okay.  Does she run that

14  business?

15         A      Yes.

16         Q      Bear Creek Movers, and that's

17  obviously a business you own?

18         A      Yes.

19         Q      And you do business as Bear Creek

20  Movers.  It's really Colbert Brian McGriff

21  doing business as Bear Creek Movers?

22         A      Yes, sir.

23         Q      And the Bear Creek Movers, what

## FREEDOM COURT REPORTING

Page 12

1   type of business is that?

2        A      Transport mobile homes, move,

3   setup.

4        Q      With respect to Bear Creek

5   Movers, you applied for insurance through

6   Canal with respect to a vehicle, I guess,

7   used in connection with that business;

8   correct?

9        A      Yes.

10       Q      And according to Defendant's

11  Exhibit 1, you took out the insurance and it

12  went into effect on November 2nd, 2005.

13  Does that sound about right?

14       A      That sounds about right.

15       Q      At the time you took out the

16  insurance with Canal, the vehicles listed

17  for which you applied for insurance was a

18  1998 IH tractor?

19       A      Yes, sir.

20       Q      Do you still own that vehicle?

21       A      Yes, sir.

22       Q      Between November 2nd, 2005, and

23  March 30th, the date of the incident giving

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

## FREEDOM COURT REPORTING

Page 13

1    rise to the underlying lawsuit, did you

2    insure any other vehicles with Canal?

3        A    Not that I know of.  I don't

4    recollect any other vehicles being insured

5    with Canal.

6        Q    The 1988 IH tractor, can you

7    describe that vehicle for me?

8        A    It's a International.  It's like

9    a cut down semi truck to transport mobile

10   homes.

11       Q    In some depositions I've read in

12   the underlying case there has been reference

13   to a tow truck.  Is that a separate vehicle

14   or is that the IH --

15       A    Tow truck or toter truck?

16       Q    Well, and that's one of the

17   reasons I'm deposing you.  I'm trying to

18   clear that up.  How it was written in the

19   transcript, they refer to it as a tow truck.

20   But that's what I'm trying to find out.  Did

21   you own a separate vehicle, a true tow truck

22   with Bear Creek Movers?

23       A    For the mobile home -- purpose of

## FREEDOM COURT REPORTING

Page 14

1  moving mobile homes, it was an

2  International, and they refer to it as a

3  toter truck.

4          Q      That's what I was going to ask

5  you.  The only vehicle that you own for Bear

6  Creek Movers that you used to move the

7  mobile homes from place to place was the

8  1998 IH tractor?

9          A      Yes.

10          Q      Okay.  On March 30th of 2006, the

11  date of this accident, is my understanding

12  correct that the 1998 IH tractor was

13  actually being driven by Lee Cook coming

14  back from Double Springs?

15          A      Yes, sir.

16          Q      The IH tractor was not present at

17  the site where this incident occurred?

18          A      No, sir.

19          Q      And it was not attached to the

20  mobile home that fell on Mr. Cook?

21          A      No, sir.

22          Q      And my understanding is that the

23  mobile home that's the basis of the

## FREEDOM COURT REPORTING

Page 15

1   underlying lawsuit had been moved out there

2   a few days earlier?

3        A     I don't remember what day.  It

4   might have been the day before, a couple

5   days, two days earlier.

6        Q     But as of March 30th of 2006, the

7   1988 IH tractor was no longer attached to

8   the mobile home?

9        A     No longer attached.

10        Q     And when I refer to the "mobile

11   home," that's the Redmond home that fell on

12   Mr. Cook giving rise to the underlying

13   lawsuit.

14        A     Yes.

15        Q     And, I guess, just to make sure

16   so I get this on the record, speaking with

17   your attorney, you have now -- there's been

18   another claim presented by the woman who

19   purchased the mobile home?

20        A     Yes, sir.

21        Q     And have you seen the lawsuits or

22   has a lawsuit been filed against you with

23   respect to the damage to the mobile home?

## FREEDOM COURT REPORTING

Page 24

1          FURTHER EXAMINATION

2     BY MR. WELLS:

3          Q    Just real quick.  On the date of

4     the accident giving rise to the underlying

5     lawsuit on March 3rd, 2006, the 1988 IH

6     tractor was no longer attached to the mobile

7     home; correct?

8          A    No, sir, it wasn't.

9          Q    And, in fact, it was, the best I

10    can tell, somewhere on either 65 or 231

11    headed south?

12         A    Yes, sir.

13         Q    Thank you.

14              (Off the record.)

15              EXAMINATION

16    BY MR. ADAMS:

17         Q    Just one thing.  What you took

18    out to that place in Henry County or what

19    was out there at that trailer at the -- I

20    mean at the place where the accident

21    occurred, what would you define that as?

22         A    A trailer.

23         Q    Okay.  That's all.

Copy of Image

**Canal Insurance Company**
BOX 7 · GREENVILLE, SOUTH CAROLINA

BASIC AUTOMOBILE LIABILITY                                    470433

Surcharge _____ Class _Mobile Home T/T_ Radius _300_

Duplicate policy certified by: _Chas. E.F. Long_ Date: 7.2.07

Consecutive Year

NEW

[X] SEE LIST FILING RECORD

Underwriter

STATE: 01
TERR:

Insureds Phone: 3348862851
Insureds ID: 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

ALPHA, PMT CARD, CHARGED
Nov 8, 2005  RDB

Items
1. Named Insured and Address
   COLBERT BRYAN MCGRIFF DBA BEAR CREEK MOVERS
   1565 CO. RD. 73
   SLOCOMB, AL 36375 [GENEVA county]

ALABAMA PUBLIC AUTO INS AGCY LIC#A043008
PO BOX 321215
BIRMINGHAM, AL 35232  (205) 324-0406

Agent Code  01008__  Comm.
Follow Up Record  Und Rept

2. Policy Period:
   From  11/2/2005 UNTIL CANCELLED
   12:01 A.M.,standard time at the address of the named insured as stated herein.

Business of the named insured is:  MOBILE HOME PULLERS - MOBILE HOMES
Radius: __ within 300 miles of the garage location.

3. Schedule as of Effective Date of this Insurance - As To: (a) Owned Automobiles;   Purposes of Use (P&B=Pleasure and Business; O=Commercial)
   Description:

| AUTO No. | Year of Model | Trade Name | Body Type and Model; Truck Size; Truck Load; Tank Gallonage Capacity; or Bus Seating Capacity | Identification (I) No.; Serial (S) No.; Motor (M) No. | Cylinders (No.) | Principally Garaged in (Town or City, State) | Purposes of Use | Classification |
|---|---|---|---|---|---|---|---|---|
| 1 | 1988 IH TRACTOR | | | 1HSZDGEN7JH571292 | | SLOCOMB, AL | C | |
| 2 | ANY MOBILE HOME WHILE SINGULARLY ATTACHED TO A SCHEDULED TRACTOR | | | | | | | |

(b) Automobile Medical Payments Coverage: Designated Person Insured

(c) Uninsured Motorists Coverage: Designated Person Insured

Designation of Automobiles - Division 1
AUTO No. _____
Insured Highway Vehicles
AUTO No. _____

4. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges.
   The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this insurance having reference thereto.

| PREMIUMS | | | | | LIMIT OF LIABILITY | | COVERAGES | SECTION |
|---|---|---|---|---|---|---|---|---|
| Total | Auto No. 1 | Auto No. 2 | Auto No. 3 | Auto No. 4 | each person | each occurrence | | |
| SEE E69 | | | | | | $1,000,000 | Combined Single Limit | A |
| | | | | | each person | each occurrence | A. Bodily Injury Liability | A |
| | | | | | | | B. Property Damage Liability | |
| | | | | | | | Automobile Medical Payments | B |
| | | | | | each person | each accident | D. Uninsured Motorists | C |
| | | | | | $20,000 BI | $40,000 BI | | |

Premium for Endorsements:
TOTAL PREMIUM  $3,931.00

Form numbers of endorsements attached to policy at issue:
TRN-1 (11-02) E-1 (12-91) E-69L (12-91) E-96 (7-91) E-4 (12-91) E-5 (12-91) E-18 (1-94) E-45 (12-91) E-70 AL (4-03) E-102 (11-93) E-125 (4-99)
Form F (6-71) A101, Info Notice: D-101 CL (1-03) ID-1 (9-03)

5. Except with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance, the named insured is the sole owner of every vehicle described in Item 3 above, unless otherwise stated herein.

Countersigned at  PO BOX 321215
BIRMINGHAM, AL 35232 11/7/2005

By _Estelle F. Smith_
Authorized Representative

ALABAMA PUBLIC AUTO INS AGCY LIC#A043008

Home Office Copy

**EXHIBIT 3**

Copy of Image

0100815114

**BASIC AUTOMOBILE LIABILITY POLICY**

STOCK COMPANY



## Canal Insurance Company

P.O. Box 7 - Greenville, South Carolina - 29602-0007

## CANAL INSURANCE COMPANY
### GREENVILLE, SOUTH CAROLINA
(A stock insurance company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the **named insured** as follows:

## SECTION A - BASIC AUTOMOBILE LIABILITY INSURANCE

### I.  COVERAGE A - BODILY INJURY LIABILITY -- COVERAGE B - PROPERTY DAMAGE LIABILITY:

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

### bodily injury or property damage

to which this insurance applies, caused by an **occurrence** and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an **owned automobile** or of a **temporary substitute automobile**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions:** This insurance does not apply:

(a) to liability assumed by the **insured** under any contract or agreement;

(b) to any obligation for which the **insured** or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(c) to **bodily injury** to any employee of the **insured** arising out of and in the course of his employment by the **insured** or to any obligation of the **insured** to indemnify another because of damages arising out of such injury; but this exclusion does not apply to any such injury arising out of and in the course of domestic employment by the **insured** unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

(d) to **property damage** to
  (1) property owned or being transported by the **insured**, or
  (2) property rented to or in the care, custody or control of the **insured**, or as to which the **insured** is for any purpose exercising physical control, other than **property damage** to a residence or private garage by a **private passenger automobile** covered by this insurance;

(e) to **bodily injury** or **property damage** due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to expenses for first aid under the Supplementary Payments provision;

(f) to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any **owned automobile** or **temporary substitute automobile** while such **automobile** is being used as a public or livery conveyance, unless such use is specifically declared and described in the declarations;

(g) to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

### II.  SUPPLEMENTARY PAYMENTS: The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the **insured** in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the **insured** because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or to furnish any such bonds;

(c) expenses incurred by the **insured** for first aid to others at the time of an accident, for **bodily injury** to which this policy applies;

(d) reasonable expenses incurred by the **insured** at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

**III. PERSONS INSURED:** Each of the following is an **insured** under this insurance to the extent set forth below:

(a) the **named insured;**

(b) any partner or executive officer thereof, but with respect to a **temporary substitute automobile** only while such **automobile** is being used in the business of the **named insured;**

(c) any other person while using an **owned automobile** or a **temporary substitute automobile** with the permission of the **named insured**, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to **bodily injury** or **property damage** arising out of the loading or unloading thereof, such other person shall be an **insured** only if he is:

   (1) a lessee or borrower of the **automobile**, or

   (2) an employee of the **named insured** or of such lessee or borrower;

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an **insured** under (a), (b) or (c) above.

None of the following is an **insured:**

(i) any person while engaged in the business of his employer with respect to **bodily injury** to any fellow employee of such person injured in the course of his employment;

(ii) except as stated under (b) above, the owner of a **temporary substitute automobile**, or any agent or employee of such owner;

(iii) any person or organization, other than the **named insured**, with respect to:

   (1) a motor vehicle while used with any **trailer** owned or hired by such person or organization and not covered by like insurance in the company (except a **trailer** designed for use with a four wheel **private passenger automobile** and not being used for business purposes with another type motor vehicle), or

   (2) a **trailer** while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the company;

(iv) any person while employed in or otherwise engaged in duties in connection with an **automobile business**, other than an **automobile business** operated by the **named insured.**

**IV. LIMITS OF LIABILITY:** Regardless of the number of (1) **insureds** under this policy, (2) persons or organizations who sustain **bodily injury** or **property damage**, (3) claims made or suits brought on account of **bodily injury** or **property damage** or (4) **automobiles** to which this policy applies, the company's liability is limited as follows:

**Coverage A -** The limit of **bodily injury** liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, because of **bodily injury** sustained by one person as the result of any one **occurrence;** but subject to the above provision respecting "each person", the total liability of the company for all damages, including damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of any one **occurrence** shall not exceed the limit of **bodily injury** liability stated in the declarations as applicable to "each **occurrence**".

**Coverage B -** The total liability of the company for all damages because of all **property damage** sustained by one or more persons or organizations as the result of any one **occurrence** shall not exceed the limit of **property damage** liability stated in the declarations as applicable to "each **occurrence**".

**Coverages A and B -** For the purpose of determining the limit of the company's liability, all **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence.**

**V. POLICY TERRITORY:** This insurance applies only to **bodily injury** or **property damage** which occurs within the **policy territory.**

**VI. DEFINITIONS:** When used in this policy (including endorsements forming a part hereof):

"**automobile**" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include **mobile equipment;**

"**bodily injury**" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"**insured**" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each **insured** against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

"**mobile equipment**" means a land vehicle (including any machinery or apparatus attached thereto,) whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the **named insured**, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

"named insured" means the person or organization named in Item 1 of the declarations of this policy;

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**;

"policy territory" means:
(1) the United States of America, its territories or possessions, or Canada, or
(2) international waters or air space, provided the **bodily injury** or **property damage** does not occur in the course of travel or transportation to or from any other country, state or nation;

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

## VII. ADDITIONAL DEFINITIONS (Automobile Liability Insurance): When used in reference to this insurance (including endorsements forming a part of the policy):

"automobile business" means the business or occupation of selling, repairing, servicing, storing or parking **automobiles**;

"owned automobile" means either
(a) an **automobile** which is owned by the **named insured** and described in the declarations; or
(b) an **automobile** ownership of which is newly acquired by the **named insured** during the policy period, provided
   (i) it replaces an **owned automobile** as defined in (a) above, or
   (ii) the company insures all **automobiles** owned by the **named insured** on the date of such acquisition and the **named insured** notifies the company within 30 days thereafter of his election to make this and no other policy issued by the company applicable to such **automobile** and pays any additional premium required therefor;
and **"owned automobile"** includes a **trailer** not described in this policy, if designed for use with a four wheel **private passenger automobile** and if not being used for business purposes with another type **automobile**;

"private passenger automobile" means a private passenger or station wagon type **automobile** and any **automobile** the **purpose of use** of which is stated in the declarations as **pleasure and business**;

"temporary substitute automobile" means an **automobile** not owned by the **named insured** or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an **owned automobile** when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction;

"trailer" includes semi-trailer but does not include **mobile equipment**;

and as to "**purpose(s) of use**":

"commercial" means use principally in the business occupation of the **named insured** as stated in the declarations including occasional use for personal, pleasure, family and other business purposes;

"pleasure and business" means personal, pleasure, family and business use.

## VIII. ADDITIONAL CONDITIONS:

**A. Other Insurance-Temporary Substitute and Newly Acquired Automobiles:** With respect to a **temporary substitute automobile**, this insurance shall be excess insurance over any other valid and collectible insurance available to the **insured**.
With respect to an **owned automobile** ownership of which is newly acquired by the **named insured** during the policy period and not described in the declarations, this insurance shall not apply if any other valid and collectible insurance is available to the **named insured**.

**B. Out of State Insurance:** If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss.

## SECTION B - AUTOMOBILE MEDICAL PAYMENT INSURANCE

**I. COVERAGE C - AUTOMOBILE MEDICAL PAYMENTS:** The company will pay all reasonable **medical expense** incurred within one year from the date of the accident:

**Division 1.** to or for each person who sustains **bodily injury**, caused by accident, while **occupying a designated automobile** which is being used by a person for whom **bodily injury** liability insurance is afforded under this policy with respect to such use;

**Division 2.** to or for each **insured** who sustains **bodily injury**, caused by accident, while **occupying** or, while a pedestrian, through being struck by a **highway vehicle**.

**Exclusions:** This insurance does not apply:

(a) to **bodily injury** to any person or **insured** while employed or otherwise engaged in duties in connection with an **automobile business**, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

(b) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) under Division 1, to **bodily injury** to any employee of the **named insured** arising out of and in the course of employment by the **named insured**, but this exclusion does not apply to any such **bodily injury** arising out of and in the course of domestic employment by the **named insured** unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

(d) under Division 2, to **bodily injury** sustained while **occupying** a **highway vehicle** owned by any **insured**, or furnished for the regular use of any **insured** by any person or organization other than the **named insured**.

**II. PERSONS INSURED - DIVISION 2:** Each of the following is an **insured** under this insurance to the extent set forth below:

(a) any person designated as **insured** in the schedule;

(b) while residents of the same household as such designated person, his spouse and the relatives of either;

and if such designated person shall die, any person who was an **insured** at the time of such death shall continue to be an **insured**.

**III. LIMIT OF LIABILITY:** Regardless of the number of (1) persons or organizations who are **insureds** under this policy, (2) persons who sustain **bodily injury**, (3) claims made or suits brought on account of **bodily injury**, or (4) **designated automobiles** to which this policy applies, the limit of liability for medical payments stated in the declarations as applicable to "each person" is the limit of the company's liability for all expenses

incurred by or on behalf of each person who sustains **bodily injury** as the result of any one accident.

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

**IV. ADDITIONAL DEFINITIONS:** The additional definitions applicable to **automobile bodily injury** liability insurance also apply to this insurance; and when used in reference to this insurance (including endorsements forming a part of the policy):

"**designated automobile**" means an **automobile** designated in the schedule and includes:

(a) an **automobile** not owned by the **named insured** while temporarily used as a substitute for an **owned automobile** designated in the schedule when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction; and

(b) a trailer designed for use with a **private passenger automobile**, if not being used for business purposes with another type **automobile** and if not a home, office, store, display or passenger trailer;

"**highway vehicle**" means a land motor vehicle or trailer other than

(a) a farm type tractor or other equipment designated for use principally off public roads, while not upon public roads;

(b) a vehicle operated on rails or crawler-treads, or

(c) a vehicle while located for use as a residence or premises;

"**medical expense**" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services;

"**occupying**" means in or upon or entering into or alighting from.

**V. POLICY PERIOD; TERRITORY:** This insurance applies only to accidents which occur during the policy period within the policy territory.

**VI. ADDITIONAL CONDITIONS:**

**A. Medical Reports; Proof and Payment of Claim:** As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder

shall not constitute an admission of liability of any person or, except hereunder, of the company.

**B. Excess Insurance:** Except with respect to an **owned automobile**, the insurance under Division 1 shall be excess insurance over any other valid and collectible automobile medical payments or automobile **medical expense** insurance.

The insurance under Division 2 shall be excess insurance over any other valid and collectible automobile medical payments or automobile **medical expense** insurance available to the **insured** under any other policy.

**C. Non-Applicability of Subrogation Condition:** The Subrogation Condition does not apply to the Automobile Medical Payments Coverage.

## SECTION C - UNINSURED MOTORISTS INSURANCE

**I. COVERAGE D - UNINSURED MOTORIST (Damages for Bodily Injury):** The company will pay all sums which the **insured** or his legal representative shall be legally entitled to recover as damages from the owner or operator of an **uninsured highway vehicle** because of **bodily injury** sustained by the **insured**, caused by accident and arising out of the ownership, maintenance or use of such **uninsured highway vehicle;** provided, for the purposes of this coverage, determination as to whether the **insured** or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the **insured** or such representative and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the **bodily injury** shall be conclusive, as between the **insured** and the company, of the issues of liability of such person or organization or of the amount of damages to which the **insured** is legally entitled unless such judgment is entered pursuant to an action prosecuted by the **insured** with the written consent of the company.

**Exclusions:** This insurance does not apply:

(a) to **bodily injury** to an **insured** with respect to which such **insured**, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;

(b) to **bodily injury** to an **insured** while **occupying** a **highway vehicle** (other than an **insured highway vehicle**) owned by the **named insured**, any **designated insured** or any relative resident in the same household as the **named** or **designated insured**, or through being struck by such a vehicle, but this exclusion does not apply to the **named insured** or his relatives while **occupying** or if struck by a **highway vehicle** owned by a **designated insured** or his relatives;

(c) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law.

**II. PERSONS INSURED:** Each of the following is an **insured** under this insurance to the extent set forth below:

(a) the **named insured** and any **designated insured** and, while residents of the same household, the spouse and relatives of either;

(b) any other person while **occupying** an **insured highway vehicle;** and

(c) any person, with respect to damages he is entitled to recover because of **bodily injury** to which this insurance applies sustained by an **insured** under (a) or (b) above.

The insurance applies separately with respect to each **insured**, except with respect to the limits of the company's liability.

**III. LIMITS OF LIABILITY:** Regardless of the number of (1) persons or organizations who are **insureds** under this policy, (2) persons who sustain **bodily injury**, (3) claims made or suits brought on account of **bodily injury**, or (4) **highway vehicles** to which this policy applies,

(a) The limit of liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages because of **bodily injury** sustained by one person as the result of any one accident and, subject to the above provision respecting "each person" the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all damages because of **bodily injury** sustained by two or more persons as the result of any one accident.

(b) Any amount payable under the terms of this insurance because of **bodily injury** sustained in an accident by a person who is an **insured** under this coverage shall be reduced by

(1) all sums paid on account of such **bodily injury** by or on behalf of

(i) the owner or operator of the **uninsured highway vehicle** and

(ii) any other person or organization jointly or severally liable together with such owner or operator for such **bodily injury**,

including all sums paid under the **bodily injury** liability coverage of the policy, and

(2) the amount paid and the present value of all amounts payable on account of such **bodily**

injury under any workmen's compensation law, disability benefits law or any similar law.

(c) Any payment made under this insurance to or for any **insured** shall be applied in reduction of the amount of damages which he may be entitled to recover from any person or organization who is an **insured** under the **bodily injury** liability coverage of the policy.

(d) The company shall not be obligated to pay under this insurance that part of the damages which the **insured** may be entitled to recover from the owner or operator of an **uninsured highway vehicle** which represents expenses for medical services paid or payable under the medical payments coverage of the policy.

**IV. POLICY PERIOD; TERRITORY:** This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

**V. ADDITIONAL DEFINITIONS:** When used in reference to this insurance (including endorsements forming a part of the policy):

"**designated insured**" means an individual named in the schedule under Designated Insured;

"**highway vehicle**" means a land motor vehicle or trailer other than

(a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads,

(b) a vehicle operated on rails or crawler-treads, or

(c) a vehicle while located for use as a residence or premises;

"**hit-and-run vehicle**" means a **highway vehicle** which causes **bodily injury** to an **insured** arising out of physical contact of such vehicle with the **insured** or with a vehicle which the **insured** is **occupying** at the time of the accident, provided:

(a) there cannot be ascertained the identity of either the operator or owner of such **highway vehicle**;

(b) the **insured** or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the **insured** or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

(c) at the company's request, the **insured** or his legal representative makes available for inspection the vehicle which the **insured** was **occupying** at the time of the accident;

"**insured highway vehicle**" means a **highway vehicle**:

(a) described in the schedule as an **insured highway vehicle** to which the **bodily injury** liability coverage of the policy applies;

(b) while temporarily used as a substitute for an **insured highway vehicle** as described in subparagraph (a) above, when withdrawn from

normal use because of its breakdown, repair, servicing, loss or destruction;

(c) while being operated by the **named** or **designated insured** or by the spouse of either if a resident of the same household;

but the term "**insured highway vehicle**" shall not include:

(i) a vehicle while used as a public or livery conveyance, unless such use is specifically declared and described in this policy;

(ii) a vehicle while being used without the permission of the owner;

(iii) under subparagraphs (b) and (c) above, a vehicle owned by the **named insured**, any **designated insured** or any resident of the same household as the **named** or **designated insured**; or

(iv) under subparagraphs (b) and (c) above, a vehicle furnished for the regular use of the **named insured** or any resident of the same household;

"**occupying**" means in or upon or entering into or alighting from;

"**state**" includes the District of Columbia, a territory or possession of the United States, and a province of Canada;

"**uninsured highway vehicle**" means:

(a) a **highway vehicle** with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the **state** in which the **insured highway vehicle** is principally garaged, no **bodily injury** liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a **bodily injury** liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; or

(b) a **hit-and-run vehicle**;

but the term "**uninsured highway vehicle**" shall not include:

(i) an **insured highway vehicle**,

(ii) a **highway vehicle** which is owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law,

(iii) a **highway vehicle** which is owned by the United States of America, Canada, a **state**, a political subdivision of any such government or an agency of any of the foregoing.

**VI. ADDITIONAL CONDITIONS:**

**A. Premium:** If during the policy period the number of **insured highway vehicles** owned by the **named insured** or spouse or the number of dealer's license plates issued to the **named insured** changes, the **named insured** shall notify the company during the policy period of any change and the premium shall be adjusted in accordance with the manuals in use by the company. If the earned premium thus computed exceeds the advance premium paid, the **named insured** shall pay the excess to the company; if less, the company shall return to the **named insured** the unearned portion paid by such **insured**.

**B. Proof of Claim; Medical Reports:** As soon as practicable, the **insured** or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The **insured** and every other person making claim hereunder shall submit to examinations under oath by any person named by the company and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim.

The injured person shall submit to physical examinations by physicians selected by the company when and as often as the company may reasonably require and he, or in the event of his incapacity his legal representative, or in the event of his death his legal representative or the person or persons entitled to sue therefor, shall upon each request from the company execute authorization to enable the company to obtain medical reports and copies of records.

**C. Assistance and Cooperation of the insured:** After notice of claim under this insurance, the company may require the **insured** to take such action as may be necessary or appropriate to preserve his right to recover damages from any person or organization alleged to be legally responsible for the **bodily injury**; and in any action against the company, the company may require the **insured** to join such person or organization as a party defendant.

**D. Notice of Legal Action:** If, before the company makes payment of loss hereunder, the **insured** or his legal representative shall institute any legal action for **bodily injury** against any person or organization legally responsible for the use of a **highway vehicle** involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the **insured** or his legal representative.

**E. Other Insurance:** With respect to **bodily injury** to an **insured** while **occupying** a **highway vehicle** not owned by the **named insured**, this insurance shall apply only as excess insurance over any other similar insurance available to such **insured** and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the **insured** has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

**F. Arbitration:** If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an **uninsured highway vehicle** because of **bodily injury** to the **insured**, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the **insured** and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.

**G. Trust Agreement:** In the event of payment to any person under this insurance:
(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made;
(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this insurance;
(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;
(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;
(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision.

**H. Payment of Loss by the Company:** Any amount due hereunder is payable:
(a) to the **insured**, or
(b) if the **insured** be a minor to his parent or guardian, or
(c) if the **insured** be deceased to his surviving spouse, otherwise
(d) to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents;
provided, the company may at its option pay any amount due hereunder in accordance with division (d) hereof.

## CONDITIONS

**1. Premium:** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the **named insured**, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the **named insured** the unearned portion paid by the **named insured**.

The **named insured** shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

**2. Inspection and Audit:** The company shall be permitted but not obligated to inspect the **named insured's** property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the **named insured** or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the **named insured's** books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Financial Responsibility Laws:** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for **bodily injury** liability or for **property damage** liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The **insured** agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**4. Insured's Duties in the Event of Occurrence, Claim or Suit:**

(a) In the event of an **occurrence**, written notice containing particulars sufficient to identify the **insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **insured** to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the **insured**, the **insured** shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The **insured** shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of injury or damage with respect to which insurance is afforded under this policy; and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The **insured** shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

**5. Action Against Company:** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **insured's** obligation to pay shall have been finally determined either by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the **insured** or determine the **insured's** liability, nor shall the company be impleaded by the **insured** or his legal representative. Bankruptcy or insolvency of the **insured** or of the **insured's** estate shall not relieve the company of any of its obligations hereunder.

**6. Other Insurance:** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the **insured** has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable

under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares**.  If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits**.  If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7.   Subrogation:**  In the event of any payment under this policy, the company shall be subrogated to all the **insured's** rights of recovery therefor against any person or organization and the **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The **insured** shall do nothing after loss to prejudice such rights.

**8.   Changes:**  Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**9.   Assignment:**  Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the **named insured** shall die, such insurance as is afforded by this policy shall apply (1) to the **named insured's** legal representative, as the **named insured**, but only while acting within the scope of his duties as such, and (2) with respect to the property of the **named insured**, to the person having proper temporary custody thereof, as **insured**, but only until the appointment and qualification of the legal representative.

**10. Cancellation:**  This policy may be cancelled by the **named insured** by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective.  This policy may be cancelled by the company by mailing to the **named insured** at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective.  The mailing of notice as aforesaid shall be sufficient proof of notice.  The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period.  Delivery of such written notice either by the **named insured** or by the company shall be equivalent to mailing.

If the **named insured** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure.  If the company cancels, earned premium shall be computed pro rata.  Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**11. Declarations:**  By acceptance of this policy, the **named insured** agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

*Wm. R. Simmons III*

*Secretary*

*Charles M. Simmons*

*President*

## Schedule of Equipment — Copy of Image — Liability

| Vehicle # | Year/Trade Name/Model/Body Type<br>Motor Vehicle Identification #(VIN) | Radius (miles) | Garage Location | Premium<br>Monthly Prem. |
|---|---|---|---|---|
| 1 | 1988 IH TRACTOR<br>1HSZDGEN7JH571292 | 300 | SLOCOMB, AL | $3,931.00<br>$328.00 |
| 2 | ANY MOBILE HOME WHILE SINGULARLY ATTACHED TO A<br>SCHEDULED TRACTOR | | | INCLUDED |

Policy Number __470433__   Endorsement Effective Time 12:01 AM _____   Endorsement Effective Date __11/02/2005__

Insured __COLBERT BRYAN MCGRIFF DBA BEAR CREEK MOVERS__   Expiration Date __Until Cancelled__

Issue Date __11/07/2005__ Authorized Signature __ALABAMA PUBLIC AUTO INS AGCY LIC#A043008__

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED
### Canal Insurance Company
Greenville, South Carolina

Form E-69L     (Rev. 12-1991)

Copy of Image

0100815114

Copy of Image

## ENDORSEMENT

## GENERAL CHANGE

IT IS UNDERSTOOD AND AGREED THAT, FOR THE VEHICLE SHOWN ON THE ATTACHED E-69
SCHEDULE OF EQUIPMENT:

*THE VIN IS AMENDED FOR VEHICLE 1, AS PER E-69L, COPY ATTACHED.

Policy Number __470433__    Endorsement Effective Time 12:01 AM _____    Endorsement Effective Date __11/14/2005__

Insured __COLBERT BRYAN MCGRIFF DBA BEAR CREEK MOVERS__    Expiration Date __Until Cancelled__

Issue Date __11/16/2005__ Authorized Signature _____
ALABAMA PUBLIC AUTO INS AGCY LIC#A043008

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

**Canal Insurance Company**

Greenville, South Carolina

Form E-1                                                                                   (Rev. 12-1991)

Copy of Image

0100815207

**Schedule of Equipment**                                          **Liability**

Copy of Image

| Vehicle # | Year/Trade Name/Model/Body Type | Radius (miles) | Garage Location | Premium |
|---|---|---|---|---|
| | Motor Vehicle Identification #(VIN) | | | Monthly Prem. |
| 1 | 1988 IH TRACTOR<br>1HSZDGFN7JH571292 | 300 | SLOCOMB, AL | $3,931.00<br>$328.00 |

Policy Number __470433__     Endorsement Effective Time 12:01 AM _____     Endorsement Effective Date __11/14/2005__

Insured __COLBERT BRYAN MCGRIFF DBA BEAR CREEK MOVERS__                    Expiration Date __Until Cancelled__

Issue Date __11/16/2005__ Authorized Signature _____

ALABAMA PUBLIC AUTO INS AGCY LIC#A043008

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

**Canal Insurance Company**

Greenville, South Carolina

Form E-69L                                                              (Rev. 12-1991)

Copy of Image

0100815207

## Status Summary Sheet

**Copy of Image**

## Liability

| Vehicle # | Year / Trade Name / Model / Body Type / Motor Vehicle Identification # (VIN) | Radius (miles) / Garage Location / Status | Limit of Liability | Monthly / Annual Premium |
|---|---|---|---|---|
| 1.0 | 1988 IH TRACTOR<br>1HSZDGEN7JH571292 | 300<br>SLOCOMB, AL | CSL/SPLIT 1,000,000<br>UM 20/40 | 328.00 /<br>3,931.00 |
| 1.1 | 1988 IH TRACTOR<br>1HSZDGEN7JH571292 | 300<br>SLOCOMB, AL<br>MODIFIED 11/14/2005 | CSL/SPLIT 1,000,000<br>UM 20/40 | -328.00 /<br>-3,931.00 |
| 1.2 | 1988 IH TRACTOR<br>1HSZDGFN7JH571292 | 300<br>SLOCOMB, AL<br>MODIFIED 11/14/2005 | CSL/SPLIT 1,000,000<br>UM 20/40 | 328.00 /<br>3,931.00 |
| 2.0 | ANY MOBILE HOME WHILE SINGULARLY ATTACHED TO A SCHEDULED TRACTOR | SLOCOMB, AL | | |
| 3.0 | 1989 INTERNATIONAL TRACTOR<br>1HTLAZPM3KH638466 | 300<br>SLOCOMB, AL<br>ADDED 6/29/2006<br>9:51 AM | CSL/SPLIT 1,000,000<br>UM 20/40 | 328.00 /<br>3,931.00 |

Policy Number ___470433___    Filings ___YES___    Summary Issue Date ___06/29/2006___

Insured ___COLBERT BRYAN MCGRIFF DBA BEAR CREEK MOVERS___    Expiration Date ___UNTIL CANCELLED___

Issuing Agent ___ALABAMA PUBLIC AUTO INS AGCY LIC#A043008___

## Canal Insurance Company
Greenville, South Carolina

**Copy of Image**

Form E-69Ls

(Rev. 6-1998)

0100816947

Copy of Image

## Status Summary Sheet                                                      Liability

| Vehicle # | Year / Trade Name / Model / Body Type  Motor Vehicle Identification # (VIN) | Radius (miles)  Garage Location  Status | Limit of Liability | Monthly / Annual Premium |
|---|---|---|---|---|
| 1.2 | 1988 IH TRACTOR  1HSZDGFN7JH571292 | 300  SLOCOMB, AL  MODIFIED 11/14/2005 | CSL/SPLIT 1,000,000  UM 20/40 | 328.00 /  3,931.00 |
| 2.0 | ANY MOBILE HOME WHILE SINGULARLY ATTACHED TO A SCHEDULED TRACTOR | SLOCOMB, AL | | |

Policy Number ___470433___    Filings ___YES___    Summary Issue Date ___06/29/2006___

Insured ___COLBERT BRYAN MCGRIFF DBA BEAR CREEK MOVERS___    Expiration Date ___UNTIL CANCELLED___

Issuing Agent ___ALABAMA PUBLIC AUTO INS AGCY LIC#A043008___

## Canal Insurance Company
### Greenville, South Carolina

Form E-69Ls

Copy of Image

(Rev. 6-1998)

0100817000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 1:07-CV-410-MHT |
| FRANK LADON COOK; | ) | |
| COLBERT BRIAN MCGRIFF; | ) | |
| LOWE'S HOME CENTERS, INC. | ) | |
| L.G. SOURCING, INC; | ) | |
| REDMOND HOMES, INC.; and | ) | |
| BEAR CREEK SALES, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF EVERETTE LEE HERNDON, JR.

1. My name is Everette Lee Herndon, Jr. I am over 19 years of age and have qualifications as outlined in my CV attached hereto. (Exhibit A)

2. My experience in the insurance industry includes 25 years as an claims adjuster and claims supervisor plus 10 years as a Claims Consultant and Expert Witness. I am licensed as an Adjuster in California and as an Attorney (Inactive) in California. I have testified in deposition over 80 times and in trial 13 times, including both state and Federal courts.

3. I have reviewed the documents provided to me concerning the facts of the case, the Basic Automobile Liability Policy issued by Canal Insurance Company to Colbert Bryan McGriff dba Bear Creek Movers and various pleadings in the various Motions for Summary Judgment and those in Opposition to the various Motions for Summary Judgment . I am qualified by education, training, experience, and personal knowledge to attest to the opinions and facts contained in this Affidavit.

4. It is my professional opinion that in accord with the standards of the insurance industry and the terms of the policy the accident in question in this lawsuit is covered under the Basic Automobile Liability Policy issued by Canal Insurance Company to Colbert Bryan McGriff

1


EXHIBIT
4

dba Bear Creek Movers.

5.  Canal Insurance Company issued a Basic Automobile Liability Policy to Colbert Bryan McGriff dba Bear Creek Movers for the business of MOBILE HOME PULLERS - MOBILE HOMES. This policy provided coverage for a 1998 IH TRACTOR and ANY MOBILE HOME WHILE SINGULARLY ATTACHED TO A SCHEDULED TRACTOR. The policy provided a Combined Single Limit of $1,000,00.00 for Coverage A - Bodily Injury. The policy stated:

> *"The company will pay . . .bodily injury . . . to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading . . .and the company shall have the right and duty to defend any suit against the insured . . . "*

6.  All parties concur that the scheduled vehicle, a 1998 IH Tractor, hauled the mobile home in question to the site in question, disconnected the mobile home from the tractor and that the tractor left the area before the mobile home was properly and completely set-up for occupancy. Frank Ladon Cook was injured before completion of the *"unloading"* process of the mobile home, a day or two after the tractor left the area.

7.  Colbert Bryan McGriff, the owner and operator of Bear Creek Movers, testified in deposition that he was in the business of transporting mobile homes to the site selected by the purchaser of the mobile home. Mr. McGriff also testified that delivery duties included inspecting the site, making sure water would not run under the mobile home, and that the ground was hard enough to back up on. Delivery responsibilities included set up of the piers to support the mobile home and tie down of the mobile home to those piers as all being part of the unloading process. Unloading was not finished until the mobile home had the piers set up with the tie downs completed and holding the mobile home stable. According to Mr. McGriff it was only at that point one would disconnect the tractor from the mobile home. Then the unloading process would be complete.

8.  Ray G. Helmer provided an Affidavit as an expert in the delivery, set-up and unloading of mobile homes. Mr. Helmer attested to various actions or failures by Bear Creek Sales (Movers) that resulted in the accident. These included:

    A.    Unloading unit at site not inspected prior to unloading

    B.    Failure to ensure unloading site was stable prior to unloading

    C.    Failure to ensure employee/agent certified in mobile home set-up was present to oversee delivery, unloading, and set-up process

    D.    Failure to ensure the unloading site was properly compacted prior to unloading

    E.    Failure to ensure site was level prior to unloading unit

    F.    Failure to ensure that the tractor used to deliver the unit stayed connected to the unit during unloading and set-up to provide adequate stability

2

Mr. Helmer attested that the accident resulted from (i.e. arose out of) the various actions or failures of Bear Creek during the unloading process associated with this the mobile home.

9.   According to the testimony of Mr. McGriff and Mr. Helmer, the two individuals most knowledgeable about the process, a mobile home is not considered unloaded until the mobile home is properly situated on an acceptable site, with piers set up and the unit is properly tied down to the piers and stable and ready for occupancy.  Both Mr. McGriff and Mr. Helmer testified to the effect that the unloading process was not complete until the mobile home was properly secured to piers and stable, which should be done prior to unhooking the unit from the tractor.  According to insurance industry claims handling and coverage standards, the accident is considered to have arisen from the act or process of "*unloading*" the mobile home, or in this case the negligent and incomplete act or process of "*unloading*" the mobile home.  The accident is considered to be "*arising out of*" the "*unloading*" in that there is a causal relationship between the negligent act of "*unloading*" and the accident itself.

10.   The Basic Automobile Liability Policy issued by Canal Insurance Company states that "*The company will pay . . .bodily injury . . . arising out of the ownership, maintenance or use, including loading and unloading . . .*"  The Canal Insurance Company policy does not define the terms "*arising out of*" or  "*unloading.*"

11.   Webster's New Collegiate Dictionary, 1977 edition, defines "*unload*" as  to *take off, deliver, to perform the act of unloading.*

12.   I researched The Fire, Casualty & Surety (FC&S) Bulletins, which are widely accepted in the insurance industry as a basic reference source for the interpretation of insurance policies in claims handling situations.  In an article entitled **"*Loading and Unloading an Insured Vehicle*"** the FC&S states:

> "*As for when the unloading stops, that has to be a matter of judgment. There is no definition in the auto policy to help, so a common sense, rational approach has to be taken.*"  (Exhibit B)

13.   Another FC&S article discusses delivery of a couch where the employees placed the couch on the floor to reposition it for carrying it to a final resting place and caused damage to the floor.

> "***Loading or Unloading Coverage Dispute:*** . . .  *Since the couch was not at the place where it was to be finally delivered, the property damage claim should be handled by the auto policy.*"  (Exhibit C)

14.   Another FC&S article discusses delivery of an item at the final destination.

> "***Business Auto or CGL for Loading and Unloading:***    *In general, the business auto policy covers "loading and unloading" from the time the article being transported is accepted until it is delivered to its final destination. . . . .However, if the men still were in the act of delivering it, the business auto policy should*

3

apply." (Exhibit D)

15. The insurance industry standard is to interpret coverage liberally in favor of the insured and to interpret exclusions narrowly. If the terminology in a policy is undefined it is to be given a common sense and rational interpretation. If the language of a policy is ambiguous it is to be interpreted in favor of the insured.

16. The 1998 IH Tractor was an insured vehicle. The tractor hauled the unit to the site. Unloading of the unit was not completed until the unit was set up and stabilized and finally delivered as being ready for occupancy. Unloading of the unit from the tractor was not completed at the time of the accident. The accident is considered to be "*arising out of*" the "*unloading*" of the unit in that the unit was improperly and negligently in the process of being unloaded and "*unloading*" was not complete in accord with the testimony of Mr. Helmer, an expert in these matters. The insured, thru his agents, was still in the act of delivering the mobile home when the accident occurred. The accident arose out of the "*unloading*" of the unit.

17. In accord with standard English usage of the word "*unloading*" and the insurance industry interpretation of "*unloading*" as discussed in the FC&S Bulletins, coverage exists under the Business Auto policy for the injuries suffered by Mr. Cook.

18. My opinion is not offered as a legal opinion but as the opinion of an insurance industry expert familiar with insurance industry standards in claims handling and policy interpretations concerning claims handling.

19. Defendant's Supplemental Brief in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment cites a number of legal cases that are consistent with and support the insurance industry claims handling procedures and policy interpretation standards listed above. The Pac. Indem. Co v Run-a-Ford Co case involved a package negligently laid against a front door with an individual tripping over the package some 30 minutes later. In the case of Raffel v Travelers Indem. Co, a role of linoleum was left standing upright at a door and later fell on and injured a plaintiff. In the case of Am. Auto. Ins. Co. v Master Bldg. Supply & Lbr. Co., some sheetrock was delivered and placed on edge and four hours later fell and injured a plaintiff. In these cases coverage was found to exist under the business automobile policy.

20. These three cases are consistent with the insurance industry interpretation that this accident arose out of and during the process of "*unloading.*" The term "*unloading*" is to be considered and defined broadly and liberally to find coverage for the insured and protection for the insured against claims arising out of the "*unloading*" process. It is not necessary that the scheduled and insured vehicle (the 1998 IH Tractor in this case) be physically connected to the mobile home during the entire "*unloading*" process or even that the insured vehicle be present at the time of the accident.

4

21.   It is my professional opinion that in accord with the standards of the insurance industry the accident in question in this lawsuit is covered under the Basic Automobile Liability Policy issued by Canal Insurance Company to Colbert Bryan McGriff dba Bear Creek Movers.

22.   This opinion is based on the information provided and reviewed and is limited to the question of policy coverage concerning the accident.  Should there be additional discovery or new information provided which would bring new or additional information to my attention, I reserve the right to revise my opinion.

23.   I have personal knowledge of the facts to which I attest.  My opinions set forth in this Affidavit are based upon my professional education, training, experience, review of provided relevant discovery undertaken tin this case, and my review of relevant and widely accepted insurance industry literature.  I prepared this Affidavit in its entirety and further attest that it is true and correct.


_____
Everette Lee Herndon, Jr.

SWORN TO AND SUBSCRIBED before me this __5th__ day of __February__ 2008.


_____
Notary Public

Commission expires __12/1/11__


GREGORY L. NELSON
COMM. #1782615
NOTARY PUBLIC ● CALIFORNIA
SACRAMENTO COUNTY
Comm. Exp. DEC. 1, 2011

5

# EXHIBIT A

# EVERETTE LEE HERNDON, JR.
## Claims Consultant & Expert Witness

7147 Murieta Parkway
Rancho Murieta, CA 95683-9543
Http://www.leeherndon.com

Phone:  916-354-8521
Fax:    916-354-2564
E-mail: herndon@ranchomurieta.org

**January 1998 to date  -  Everette Lee Herndon, Jr.**
### Claims Consultant & Expert Witness
Claims Consultant & Expert Witness. Insurance Bad Faith. Insurance claims handling, custom and practice. Claims handler E&O. Claims handler malpractice. Insurance industry standards. State and Federal Court. Property, Liability, Automobile and Workers Compensation. Over 37 years experience in claims handling issues, coverage issues, claims management and litigation management. Trained and supervised adjusters. High standards of integrity and professionalism.

**June 1996 to July 1997**          **Contra Costa County Grand Jury**
### Grand Juror
Responsible for investigation of reports of malfeasance and misfeasance of governmental entities within the county. Conducted investigations and wrote reports.

**April 1970 to September 1995**       **GAB Robins North America, Inc.**
### Regional Supervisor
Responsible for the supervision, coordination and review of adjusters, claims, claims files and claims programs for numerous insurance companies, corporate and public entity accounts - liability, property, automobile and workers compensation.  Trained adjusters in claims handling and industry standards.  Directed defense counsel.  Handled high exposure claims:  e.g. complex litigation, coverage issues, E&O, construction defect, products liability, employment and environmental pollution.  Reported directly to Regional Vice President.

**June 1966 to June 1994**          **United States Air Force, Reserves**
### Intelligence Officer
Retired - Lieutenant Colonel, Air Intelligence Agency, Reserves.  Intelligence analyst. Briefed command staff.  Briefed and debriefed combat crews.  Imagery interpretation officer.  Executive Officer, Director of Operations and Training, IRD-20.

December 1, 2007                    1

### Everette Lee Herndon, Jr.

Positions with GAB (partial list): Qualified Manager, Regional Supervisor, Regional Casualty Supervisor, Regional Casualty General Adjuster, Manager of Contract Administration Center, and multi-line adjuster.

Activities while with GAB:

- In 25 years with GAB Robins North America, Inc., I adjusted or personally supervised over 30,000 files: property, liability, automobile and worker's compensation.

- Held GAB's California Independent Adjuster License and served as GAB's Qualified Manager for four years.

- Worked on or supervised claims for over 100 different insurance companies.

- Dealt with claims and litigation in all 50 states.

- Organized, trained and supervised GAB's first Worker's Compensation unit in California.  Self-insured Worker's Compensation Administrator.

- Developed and wrote GAB's  "A Guide to California Claims Handling Under Title 10" - California's Fair Claims Settlement Practices regulations.

- Conducted training seminars for adjusters to insure compliance with state regulations, good claims handling practices, good faith and avoidance of bad faith.

- Performed branch inspections and file audits.

- Devised, initiated and recommended  standards and procedures to adjusters and branch managers for improving the quality and accuracy of their investigations and reporting procedures.

- Resolved many delicate and complicated coverage interpretation issues between insureds, insurance companies and brokers over the interpretations of both standard and manuscript policies.

- Founding member of Integrated Quality Team for Pacific Region.  Trained adjusters on Total Quality Management methods.

- Set up and supervised new liability unit and obtained assignment from insurance company of over 1700 litigated cases from another third party administrator. Trained examiners and supervisors.

December 1, 2007                              2

## Everette Lee Herndon, Jr.

**CREDENTIALS:**

- Attorney - Member of State Bar of California - # 96464  (1980) (Inactive)
- Insurance Adjuster License - # 2C02651
- Certified Forensic Consultant
- Senior Claim Law Associate
- Property Claim Law Associate
- Automobile Claim Law Associate
- Fraud Claim Law Associate
- Worker's Compensation Claim Law Associate
- Legal Principles Claim Specialist
- Associate in Claims
- Certificate to teach Law at Community College level in California
- Graduate Certificate in Teaching Critical Thinking

**PUBLICATIONS:**

- *"The Mold Exclusion," Claims*, September 2007
- *"After The Mold Exclusion." Mealey's Litigation Report* - Mold, July 2007
- *"Bad Faith in First Party Property Claims," The Advocate*, September 2004
- *"Do Adjusters Have a Duty to Warn of the Risks of Mold Contamination?" Mealey's Litigation Report: Mold*, October 2001
- *"Are Mold Claims Covered Under a Homeowner's Policy?"* Mealey's Mold Conference, June 26, 2001
- *"Mold & Mildew: A Creeping Catastrophe," Claims*, August 2000
- *"Water Damage Claims and Mold," IAQ COUNCIL*, July/August 2000
- *"Protect Yourself From Mold Liability," Cleaning & Restoration*, Nov. 2000
- *"Asbestos Awareness Training: Protecting Both Adjusters and Insureds," Claims*, December 1998
- *"A Guide to California Claims Handling Under Title 10,"*  GAB, January 1994

**SPEAKER:**

- Mealey's Mold Conference, June 2001, Marina del Rey, CA - *"In-Depth Analysis of the Insurance Coverage Issues In Mold Litigation"*
- Mealey's Mold Conference, October 2001, Pasadena, CA - *"Insurance Coverage and Bad Faith"*
- Mealey's Mold Conference, February 2002, Phoenix, AZ - *"Insurance Coverage Issues Part I: First Party Claims"*
- Policyholders of America, March 2002, Austin, TX - Insurance, Mold and Bad Faith
- Harris-Martin Mold Conference, October 2002, San Antonio, TX - *"Analysis of a Mold Case: Interactive Panel Discussion"*
- American College of Toxicology, November 2004, Palm Springs, CA - *"The Great Debate: Indoor Mold - Plague or Nuisance?"*

December 1, 2007                                          3

**Everette Lee Herndon, Jr.**

**PROFESSIONAL ASSOCIATIONS:**

- State Bar of California - # 96464  (1980) (Inactive)
- Forensic Expert Witness Association
- American College of Forensic Examiners Institute
- Society of Claim Law Associates

**EDUCATION:**

**GAB Robins North America, Inc:**
- Damages School
- Remedies School
- Advanced Casualty School
- Vale Tech, Automobile School
- Intermediate Casualty School
- Basic Property and Casualty School
- Casualty Correspondence Course
- Property Correspondence Course

**San Francisco State University:**
- Master of Arts - Philosophy.  1997
- Graduate Certificate in Teaching Critical Thinking

**John F. Kennedy University - School of Law:**
- Juris Doctor.  1980.

**University of Georgia:**
- Bachelor of Arts - Philosophy.  1966.

December 1, 2007                    4

## Everette Lee Herndon, Jr.

### Conferences and Seminars (partial listing - 1999 thru 2007):

- Low, Ball & Lynch - CA Fair Claims Settlement Practices - November 2007
- Claims Conference of Northern California,  September 2007
- Ropers, Majeski, Kahn & Bentley - Year in Review - May 2007
- ACFEI Regional Conference - July 18/19, 2006
- FEWA Expert Witness Summit - March 31/April 1, 2006
- Low, Ball & Lynch - CA Fair Claims Settlement Practices - November 2005
- Sacramento Claims Association - Update on California Law, November 2005
- Ropers, Majeski, Kahn & Bentley - Year in Review - May 2005
- Low, Ball & Lynch - CA Fair Claims Settlement Practices - November 2004
- American College of Toxicology Conference - November 2004
- Claims Conference of Northern California,  September 2004
- Ropers, Majeski, Kahn & Bentley - Year in Review - May 2004
- Low, Ball & Lynch - California Law Update - November 2003
- ACE-SCLA Conference - Seattle, WA, October 2003
- Claims Conference of Northern California, September 2003
- Ropers, Majeski, Kahn & Bentley - Year in Review - May 2003
- Harris-Martin's Mold Litigation Conference,  San Antonio, TX, October 2002
- Claims Conference of Northern California, September, 2002
- Ropers, Majeski, Kahn & Bentley - Year in Review - May 2002
- Property Loss Research Bureau Claims Conference - Anaheim, CA, April 2002
- Policyholders of America - Attorney Workshop, Austin, TX - March 2003
- Mealey's National Mold Litigation Conference, Phoenix, AZ, February 2002
- Property Claims Forum - Summer Mold Seminar - June 2001
- Low, Ball & Lynch - California Law Update - November 2001
- Mealey's National Mold Litigation Conference, Pasadena, CA, October 2001
- Mealey's National Mold Conference, Marina del Rey, CA, June 2001
- Ropers, Majeski, Kahn & Bentley - Year in Review - May 2001
- Claims Conference of Northern California, September 2000
- Ropers, Majeski, Kahn & Bentley - Year in Review - May 2000
- Low, Ball & Lynch - California Law Update - April 2000
- Ropers, Majeski, Kahn & Bentley - Third Party Bad Faith - October 1999
- Ropers, Majeski, Kahn & Bentley - Year in Review - April 1999
- PLRB/LIRB Claims Conference - New Orleans, LA, March 1999

December 1, 2007                              5

Case 1:07-cv-00410-MHT-TFM    Document 51-2    Filed 02/08/2008    Page 12 of 14

# EXHIBIT B

Case 1:07-cv-00410-MHT-TFM    Document 51-2    Filed 02/05/2 Page 3 of 5



**Current document:**
The FC&S Bulletins/Q&A VOLUME/Business Auto/Loading and
Unloading an Insured Vehicle

# Loading and Unloading
# an Insured Vehicle



I have a question regarding the loading and unloading of an insured vehicle under the
business auto policy. If our insured is at a job site and is unloading a ladder from his truck and the
ladder falls, damaging an object, does the BAP apply to the damage?

Also, at what point would the ladder be considered to be not in the act of unloading? I
considered the analogy of delivering an item to its final destination, but this is not an item being
delivered. If the ladder was placed on the ground after unloading, and then picked up again to
move to the worksite, has the act of placing the ladder on the ground ended the unloading?

**New Jersey Subscriber**



The business auto policy does not actually discuss loading and unloading like the CGL form.
But, there is an exclusion on the BAP pertaining to bodily injury or property damage resulting
from the movement of property. Of course, this exclusion applies only when the injury or damage
results from the movement of property by a mechanical device, unless the device is attached to
the covered auto. Since in this case, the damage resulted from the moving of property by hand,
this exclusion does not apply and the damage is covered by the auto policy.

As for when the unloading stops, that has to be a matter of judgment. There is no definition in
the auto policy to help, so a common sense, rational approach has to be taken. In this instance,
since there is no intention of delivering the ladder anywhere and it is just being taken off the truck
for work purposes, we are of the opinion that once the ladder leaves the truck, that is when the
unloading stops. After the insured has placed the ladder on the ground with the intention of
picking it up again to use in his work, the act of unloading has already ended.

Case 1:07-cv-00410-MHT-TFM   Document 51-2   Filed 02/06/2008   Page 4 of 5

# EXHIBIT C

Case 1:07-cv-00410-MHT-TFM   Document 51-2   Filed 02/08/2008   Page 1 of 5



**Current document:**
The FC&S Bulletins/Q&A VOLUME/Commercial Property/Loading or Unloading Coverage Dispute

## Loading or Unloading Coverage Dispute

**Q**

The question we have is in regard to which policy covers the following loss. The insured is a furniture delivery company. While delivering a couch, the employees placed the couch on the floor to reposition it for carrying it to the final resting spot. The couch leg snagged the carpet and damaged it. Is this damage covered under the commercial auto policy or the general liability policy?

**Kentucky Subscriber**



Since the couch was not at the place where it was to be finally delivered, the property damage claim should be handled by the auto policy. The loading or unloading exclusion on the general liability form applies to property damage due to the handling of property while the property is being moved from an auto to the place where it is finally delivered. The handling of property exclusion on the auto policy applies to property damage resulting from the handling of property after the property is moved from the covered auto to the place where it is finally delivered by the insured. The two exclusions on the two policies complement each other in this way so as to give the insured liability coverage for property damage he causes while delivering or moving or handling property, both while the property is in the loading or unloading phase and while it is in the auto itself.

Case 1:07-cv-00410-MHT-TFM    Document 51-2    Filed 02/06/2008    Page

# EXHIBIT D

Case 1:07-cv-00410-MHT-TFM    Document 51-2    Filed 02/06/2008    Page 2 of 2



**Current document:**
The FC&S Bulletins/Q&A VOLUME/Business Auto/Business Auto
or CGL Coverage for Loading and Unloading?

# Business Auto or CGL Coverage
# for Loading and Unloading?

**Q**

Should the business auto or the CGL policy respond to a situation in which a fireplace, being delivered to the buyer's home scratches a floor? One of our clients sells fireplaces, and a floor was scratched during delivery of a fireplace unit. We turned the claim in to the auto carrier, but the adjuster denied it and said the CGL insurer should handle it. The men who delivered the fireplace also installed it. Which coverage should apply?

**Ohio Subscriber**



In general, the business auto policy covers "loading and unloading" from the time the article being transported is accepted until it is delivered to its final destination. The commercial general liability policy generally handles third party damages caused prior to acceptance and after delivery.

Therefore, you should determine the point at which the floor was scratched. The fact that the same individuals who delivered the fireplace installed it may make it more difficult to determine whether the delivery had been completed or not when the damage occurred. If the fireplace was in place in the home and installation had been started, the CGL should respond. However, if the men still were in the act of delivering it, the business auto policy should apply.

# BIRMINGHAM REPORTING SERVICE

```
 1              IN THE CIRCUIT COURT OF HENRY COUNTY

 2                        ALABAMA

 3

 4    FRANK LADON COOK,           )

 5                                )

 6           Plaintiff,           )

 7    v.                          )    CV-06-042H

 8    BEAR CREEK SALES,           )

 9    L.L.C., et al.,             )

10                                )

11           Defendants.          )

12

13              S T I P U L A T I O N

14                    IT IS STIPULATED AND

15    AGREED, by and between the parties through

16    their respective counsel, that the

17    discovery deposition of

18    * * * * * * * * * * * * * * * * * * * * * * * * *

19              RANDY LEE COOK, JR.

20    * * * * * * * * * * * * * * * * * * * * * * * * *

21                        may be taken before Paul

22    Moore, Commissioner, at the offices of

23    Merrill, Harrison & Adams, LLC, Dothan,
```

EXHIBIT
5

COPY

1   you?

2       A   No, sir.  No, sir.  I just bought

3   some half-inch plate a little bit wider

4   than the beam, and I cut them down to the

5   size I needed them.

6       Q   Okay.  All right.  When you came out

7   to the property to drop the house, can you

8   describe what the land looked like where

9   you were going to site the house?

10      A   They had had a pad built up for it,

11  and it was a little soft, the pad was a

12  little soft when I backed it in there.  But

13  it was - - it was pretty close to level, it

14  wasn't real bad off.  It might have been a

15  little bit off on the woods side, but not

16  bad, bad.

17      Q   Did it appear to you that a lot of

18  trees and debris had been moved?

19      A   Yes, sir.  Yes, sir, there had been

20  some trees and stuff removed from the area.

21      Q   Did you see any large stumps?

22      A   I didn't see none.

23      Q   And you said a pad built up, what do

1    you mean by a "pad"?

2        A    They brought dirt in - -

3        Q    Just brought dirt in?

4        A    - - and built it up.  Yes, sir.

5    They brought dirt in and built it up on top

6    of the grass and everything that was there,

7    or tree stumps, or whatever they took out.

8    There was some trees and small brush and

9    stuff down there that they had cleared off.

10   And then, they had put them pad - - put the

11   pad down.  The dirt, they had brought it

12   in, and then they leveled it out and kind

13   of crowned it off just a little bit, so

14   water couldn't get up under the house.

15       Q    Okay.  Could you tell if it had been

16   compacted?

17       A    No, sir, I couldn't really tell.  It

18   wasn't - - it wasn't compacted good if it

19   was.

20       Q    And you say that because you were

21   having trouble backing it in?

22       A    When I backed it in, it was kind of

23   soft because it made a little bit of ruts

# BIRMINGHAM REPORTING SERVICE

145

1    in it.  When it goes in there, it was soft

2    feeling whenever I was out there looking at

3    the location.

4        Q    Okay.  How high should you - - or I

5    guess, what's the safe height, I guess, the

6    highest that you should go up with piers

7    safely?

8        A    There ain't really no safe height.

9    You're supposed to keep something wedged up

10   underneath it at all times.  There ain't

11   really - - but if you're going to take

12   tires and axles off, I don't know really of

13   any safe height that you can go over.

14       Q    So, any time you start putting it

15   up, you need to immediately get something

16   underneath there to - -

17       A    If you've got tires and axles off,

18   most definitely.  But if you ain't got

19   tires and axles off, you can jack it up to

20   clear the tires or stuff like that, it

21   ain't going to hurt nothing.

22       Q    Because the tires and axle will keep

23   it from falling all the way to the ground?

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CANAL INSURANCE COMPANY,    )
    )
    Plaintiff,    )
    )
v.    )    CIVIL ACTION NO.:
    )    1:07-cv-410-MHT
FRANK LADON COOK;    )
COLBERT BRIAN MCGRIFF;    )
LOWE'S HOME CENTERS, INC.;    )
L.G. SOURCING, INC.;    )
REDMOND HOMES, INC.; and    )
BEAR CREEK SALES, L.L.C.,    )
    )
    Defendants.    )

## AFFIDAVIT OF RAY G. HELMER, P.E.

1.    My name is Ray G. Helmer, P.E. I am over nineteen (19) years of age and have qualifications as outlined in my CV attached hereto.

2.    As part of my work history and experience, I have been responsible for and participated in the proper unloading, set-up, and delivery of modular dwelling units. My experience also includes understanding and implementing proper site development and preparation for the delivery, set-up, and unloading of modular dwelling units.

3.    I have studied the discovery propounded and answered by the parties thoroughly and in detail in this matter, as well as all deposition testimony given in connection with the underlying lawsuit and hereby acquired personal knowledge of the facts attested to herein. I am qualified by education, training, experience, and personal knowledge to attest to the opinions and facts contained in this Affidavit.



EXHIBIT
6

4.    It is my professional opinion that the accident made the basis of this lawsuit resulted from the following actions or failures to act by Bear Creek Sales, L.L.C. or their employees/agents:

(a)    unloading the subject mobile home at a site which was not inspected prior to unloading;

(b)    failing to ensure that the unloading site was stable prior to unloading;

(c)    failing to ensure that an agent/employee of Bear Creek Sales, L.L.C. who was certified in mobile home set-up was present to oversee the delivery, unloading, and set-up process;

(d)    failing to ensure that the unloading site was properly compacted prior to unloading;

(e)    failing to ensure that the site was level prior to unloading the subject mobile home;

(f)    failing to ensure that the tractor used to deliver the mobile home stayed connected to the mobile home during unloading and set-up to provide adequate stability.

5.    While the foregoing is the opinion that the undersigned intends to express in this case, there may be additional acts and omissions of which the undersigned is unaware at this time or that will depend on further discovery.

6.    I have personal knowledge of the facts to which I attest herein, and my opinions set forth in this Affidavit are based upon my professional education, training, experience, review of all relevant discovery undertaken in this case, and my review of

2

relevant and widely accepted engineering literature. I have read this Affidavit in its
entirety, and further attest that it is true and correct.


_____
Ray G. Helmer


SWORN TO AND SUBSCRIBED before me this ⁵͟ day of ͟J͟u͟l͟y͟
2007.


_____
Notary Public

SABRINA CRESPIN
Notary Public
STATE OF TEXAS
My Comm. Exp. March 29, 2010

Commission expires: _____

3

**Ray G. Helmer**
Licensed Professional Engineer
Civil & Structural Engineering Consultant
9314 Bankside Drive
Houston, TX 77031-1713
(713) 777-7611
FAX (713) 774-6881
E-mail: HelmerEng@houston.rr.com
www.helmer-engineering.com

## ENGINEERING EXPERIENCE

As a Licensed Professional Engineer in Texas, Alabama and Ohio, Ray G. Helmer has acted as a Consultant, Chief Engineer, Senior Project Engineer and Lead Engineer in the planning, design and construction of multi-million dollar projects for half a century. These include commercial and industrial sites and buildings, single and multi-family residential sites and buildings, highways, major drainage projects and aviation facilities.

## ACADEMIC QUALIFICATIONS

- B.S. in Civil Engineering, Virginia Military Institute (VMI) (1954)
- Licensed Professional Engineer in Ohio (1959), Texas (1982) and Alabama (2006)
- Registered Environmental Professional
- Commissioned Officer, U.S. Army Corps of Engineers

## ENGINEERING EMPLOYMENT

**Civil Engineer, Olin Mathieson Chemical Corp., East Alton, Illinois**

- Engineer in Plant Engineering Department. This plant manufactures aluminum, ammunition and explosives. Performed surveys and prepared maps of existing utilities including sewer, water, storm drainage, gas, electric and compressed air.

**U.S. Army Corps of Engineers**

- Military Engineering at Fort Riley, Kansas and Fort McCoy, Wisconsin. Supervised construction of frame buildings for storage of vehicles and supplies.

1

**1957-60, Civil Project Engineer, Dodson Lindblom Associates, Columbus, Ohio**

- US Route 127 Upgrade, Dayton/Cincinnati, Ohio
- Rickenbacker and Wright Patterson Air Force Bases, Ohio

**1960-60  Civil Engineer, Greenland Contractors, Thule, Greenland**

- Estimator and negotiator for Greenland Contractors during construction of Ballistic Missile Early Warning System for U.S. Army Corps of Engineers. Made cost estimates, proposals, and negotiated contract changes with the Corps of Engineers. The project included a number of very large radar antennas and support buildings.

**1960-67, Chief Highway Engineer, Brill Engineering Corporation, Columbus, Ohio**

- Interstate 270, Columbus, Ohio
  Conceptual, preliminary and final design of Interstate 270, a 55-mile circumferential highway around Columbus, Ohio, for Ohio Department of Transportation. This was a six- to seven-year engagement.

**1967-71, Senior Transportation Engineer, Mid-Ohio Regional Planning Commission, Columbus, Ohio; and Chief Transportation Engineer, Richland County Regional Planning Commission, Mansfield, Ohio**

- Responsible for comprehensive county-wide transportation studies under the auspices of the US Federal Highway Administration and the US Department of Housing and Urban Development.

**1971-79, Regional Construction Engineer-Manager, Cardinal Industries, Inc., Columbus, Ohio**

- Multi-Unit Apartment and Motel Projects, Ohio and Pennsylvania
  Responsible for design and construction of sixty (60) apartment and motel projects in Ohio and Pennsylvania, totaling 3000 housing units. Each of these projects included concrete or asphalt paving, concrete sidewalks, building foundations, carpentry, electric service and wiring, plumbing, air conditioning, water service lines, sanitary sewers, storm sewers and culverts, fencing, landscaping, painting and other construction tasks. I was the regional Construction Manager who was responsible for all aspects of design and construction of these projects including advertising for bids, evaluating bids, awarding contracts, managing the construction, receiving invoices from

2

contractors verifying quality and quantity of completed construction, approving contractor invoices, and making final punchout inspections.

**1980-81, Regional Engineer, National Corrugated Steel Pipe Association, Des Plaines, Illinois (now Washington, D.C.)**

- Drainage Standards, Multiple States
  Regional engineer covering states of Ohio, Michigan, Indiana, Kentucky and West Virginia for National Corrugated Steel Pipe Association; assisted public agencies and consulting engineering firms in development of drainage standards and specifications

**1981-88, Principal Civil Engineer, Bovay Engineering Corporation, Houston, Texas**

- US 290 Extension, Houston, Texas

- I-10 Interchange, El Paso, Texas

- Hardy Toll Road, Houston, Texas

- City of Houston — Lead Engineer on design of West Tidwell Road from Ella to North Shepherd including street paving, 108-inch storm sewer, water, and sewer relocations.

- City of Houston — Lead Engineer on design of improvement of Cavalcade from Lockwood to Homestead including street paving, drainage, water and sewer utilities.

- Harris County — Lead Engineer on an extension and improvement of Greens Road from West Hardy Road across a branch of Greens Bayou and Missouri Pacific Railroad including paving and drainage improvements.

- Water Distribution/Sewer and Irrigation, Tanajib, Saudi Arabia
  Lead Engineer on design of water distribution, sanitary sewer and irrigation systems for an entire new city at Tanajib in Saudi Arabia.

- Plant Site Grading, Paving and Utilities, Illinois
  Project engineer on design of plastics manufacturing plants at Manteno and Grant Park, Illinois, including site grading, drainage, paving and utilities.

- Haul Road and Civil Improvements, Jewett, Texas
  Project engineer on design of haul road and civil improvements for tipple and conveyor from the tipple to the power plant for a lignite mine at Jewett, Texas, for

3

Houston Lighting and Power Company. This project included engineering design of concrete sidewalk, grading and drainage along the mile-long conveyor system.

### 1989-90, Coordinating Engineer, Binkley and Barfield, Inc., Houston, Texas

- Urban Arterial System Upgrade, Texas
  Coordinating Engineer on a $60 million project to improve 14 miles of major urban arterial to a seven (7) lane typical section.

### 1991-92, Senior Civil Engineer, John Brown Engineers and Constructors, Houston, Texas

- Roads and Water Management, Saudi Arabia
  Managed engineering design of 14-mile access highway, earthmoving and compaction, drainage, water and sewer systems, and airport to FAA standards for a grass roots oilfield (75 wells) in Saudi Arabia for Aramco.

### 1993-2002, Senior Project Manager, Ratnala & Bahl, Inc., Engineers, Architects and Surveyors, Houston, Texas

- $10 Million Bridge Project for New George Bush Turnpike north of Dallas, Texas. Design of five Interstate-type bridges for three new interchanges on new George Bush Turnpike north of Dallas, Texas. The project included detailed bridge and retaining wall design, and engineering design of pavements, drainage, traffic signals, highway lighting.

- Sanitary Gravity Sewers, Fort Worth, Texas
  Senior Project Engineer on design of 8- to 30-inch sanitary gravity sewers involving open cut and tunneling (in rock) in an extremely adverse environment on a hillside in a river valley in City of Fort Worth, Texas.

- Water System Improvement, Fort Worth, Texas
  Senior Project Engineer on design of water system improvements for City of Fort Worth, Texas. This project constructed "loops" (connections) between the ends of a number of dead-end water lines. The objective was to increase water pressure and eliminate stale water.

- $10 Million Street and Storm Sewer Improvement, Houston, Texas
  Design of a $10 million major street and storm sewer improvement project on Austin Street in the Houston, Texas, central business district including five-lane

4

concrete street paving, dual 9-foot by 8-foot box storm sewer, water and sewer adjustments.

- Roadway and Bridge Improvement, Harris County, Texas
  Senior Project Manager on design of a roadway and bridge improvement project linking two parks across an aqueduct for Harris County, Texas. The project includes roadway paving, bridge, 2,000 lineal feet of retaining walls, grading, drainage.

- Street Improvement, Fort Worth, Texas
  Senior Project Manager on design of a street improvement project in a hilly area in City of Fort Worth, Texas. The project includes design of street paving, storm sewers, sanitary sewers, and 8- to 16-inch water distribution lines.

- Houston Hobby Airport Pavement/Runway Rehabilitation
  Senior Project Manager on $10 million Houston Hobby Airport Pavement Rehabilitation project on Runways 4/22 and 12L/30R and Taxiways "A", "E", "J", "K", "L" and "M". The pavement rehabilitation includes concrete panel replacement, joint sealing, asphalt patching, crack sealing, spalled concrete repair, sealing of concrete surfaces, installation of expansion joints, light can replacements, signs and pavement markings, all to FAA standards. The project also includes pavement rehabilitation at several tenant transition pavement areas and the Southwest Airlines air cargo building, as well a turnaround for large fire trucks at the ARFF facility.

## PROFESSIONAL AFFILIATIONS

- American Society of Civil Engineers (Vice President of the Houston Branch)
- National Society of Professional Engineers
- Institute of Transportation Engineers
- Engineers Council of Houston (Past President)
- American Water Works Association
- Water Environment Federation

## AWARDS

- Professional Service Award from the American Society of Civil Engineers (ASCE)

5